# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W.L. DOGGETT LLC AND DOGGETT HEAVY MACHINERY SERVICES, LLC, | § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § § | CIVIL ACTION NO. 14-cv-506 |
| PAYCHEX, INC. AND JOHN DOES 1-10, | § § § § | |
| **Defendants.** | § | |

**DECLARATION OF AMY L. FICI IN SUPPORT OF MOTION TO
TRANSFER VENUE TO WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK | § § |
| MONROE COUNTY | § |

1.    "My name is Amy L. Fici.  I am over twenty-one (21) years of age, am of sound mind, am capable of making this declaration, and am fully competent and authorized to testify to the matters stated herein.  All of the facts stated in this declaration are true and correct and were either collected by corporate personnel and other persons with knowledge of the facts, are based on my review of the records located in Paychex, Inc.'s ("Paychex") records, or are within my personal knowledge as an agent of Paychex.

2.     "I am Corporate Counsel for Paychex and am authorized to make this declaration on its behalf.  I have reviewed the Plaintiffs' First Amended Complaint ("Complaint") in this case.  All capitalized undefined terms as used herein shall have the meaning as they are defined in the Complaint.

3.     "Paychex is a leading provider of payroll, human resource, and benefits outsourcing solutions.

4.     "Paychex's corporate headquarters and principal place of business are located on Panorama Trail in Rochester, New York.  It also operates seven other corporate offices in the Rochester, New York area:  four in Rochester, New York; two in Webster, New York; and one in West Henrietta, New York (collectively referred to as "corporate offices").  All of these corporate offices are located in the Western District of New York ("WDNY"), and all are considered to be in the greater Rochester area.  All of these cities and their surrounding areas, all of which are located within the WDNY, are collectively referred to herein as "Greater Rochester."

5.     "Paychex's Legal Department is located in the corporate headquarters. From this location, the members of the Legal Department handle all legal matters for Paychex's corporate operations as well as legal matters arising out of any of its branches across the country.

6.     "In my capacity as corporate counsel, I manage certain litigation matters for Paychex, including the instant litigation.  In managing litigation, I regularly attend significant court proceedings and depositions, and would do so in the instant litigation.

7.     "Based on Paychex's records, which are located in the corporate offices in the WDNY, Plaintiff W.L. Doggett LLC d/b/a Red Dog Rental Services and d/b/a Doggett Machinery Services ("W.L. Doggett") entered into the following agreements with Paychex:

    a.     Paychex Major Market Services Agreement and Addendum dated October 19, 2010 ("W.L. Doggett MMS Agreement"), a true and correct copy of which is attached hereto as Exhibit A-1, but with the federal ID number partially redacted; and

    b.     Paychex Human Resources Services Agreement dated October 27, 2010 ("W.L. Doggett HR Agreement"), a true and correct copy of which is attached hereto as Exhibit A-2, but with the federal ID number partially redacted.

8.     "Based on Paychex's records, which are located in the corporate offices in the WDNY, Plaintiff Doggett Heavy Machinery Services, LLC d/b/a Doggett Heavy Machinery Services—Houston ("Doggett Machinery") entered into the following agreements with Paychex:

    a.     Paychex Major Market Services Agreement and Addendum dated October 27, 2010 ("Doggett Machinery MMS Agreement"), a true and correct copy of which is attached hereto as Exhibit A-3, but with the federal ID number partially redacted;  and

    b.     Paychex Human Resources Agreement dated October 27, 2010 ("Doggett Machinery HR Agreement"), a true and correct copy of

which is attached hereto as Exhibit A-4, but with the federal ID number partially redacted.

9.      "The W.L. Doggett MMS Agreement and Doggett Machinery MMS Agreement are jointly referred to herein as the "MMS Agreements." The W.L. Doggett HR Agreement and Doggett Machinery HR Agreement are jointly referred to herein as the "HR Agreements." All agreements collectively referred to herein as the "Agreements."

10.     "True and correct copies of the Plan Contact Change Form from Paychex's records that are referenced in Paragraph 12 of the Complaint are attached hereto as Exhibit A-5, but with federal ID numbers and e-mail addresses redacted.

11.     "The allegations in the Complaint regarding the "HR Credentials" and "Doggett Account" appear to be referencing the Paychex HR Online service.

12.     "Paychex's HR Online department ("HRO"), and all of the HRO employees who provide the HR services Plaintiffs refer to in the Complaint, are located in New York, except for a small staff at a client support call center in Denver, Colorado. While the call center employees can assist clients who call in with support-related questions, the main office of HRO is in Greater Rochester. The employees and two supervisors located in Denver, Colorado report directly to managers located in Greater Rochester. All other employees, supervisors,

managers, directors, and corporate officers relating to HRO work in the WDNY and, upon information and belief, live in the WDNY.

13.    "Paychex's corporate and client records and documents are maintained in various databases stored on its computer servers, which are physically located in its corporate offices in the WDNY. Such documents include client service agreements, corporate policies and procedures, and e-mails. All e-mails to, from, and between all Paychex employees, including e-mails from branches located around the country, are routed through and stored on servers located entirely in Greater Rochester in the WDNY; this is true, regardless of the location of the parties to the e-mail communication. Direct access to, and the administration, maintenance, and preservation of, these separate, restricted databases is not available to Paychex's employees located outside of its corporate offices in Greater Rochester.

14.    "All of Paychex's servers, which house all of its applications and client data, including the data and applications that the Plaintiffs allege were breached, are located on servers in Greater Rochester. When Plaintiffs say in the Complaint that they used Paychex online services, Plaintiffs were connecting to servers in New York.

15. "HRO provides, among other things, a web-based Human Resource Management System that allows clients of HR Online (and their employees) to access certain human resource and payroll information.

16. "The Paychex Time and Labor Online department ("TLO") provides Paychex Time and Labor Online service, which is an internet-based time and attendance system used for collecting time information for import into payroll software.

17. "The Paychex Enterprise Data Security department ("Data Security") manages all Paychex information technology security.

18. "Key employees from HRO, TLO, and Data Security will likely provide testimony (and will be involved with Paychex' defense) relating to the management and security of the Doggett Account, policies and procedures relating to account access by Doggett's designated client contact(s), and access to the Doggett Account using the Jacques Credentials. While Paychex has not yet identified which individuals will be required to testify, potential witnesses on these topics will be from these departments, and are located at one of Paychex's corporate offices in the WDNY.

19. "The TLO and Data Security departments are each located exclusively at one of the corporate offices in the WDNY, and the main office of HRO is likewise located at one of the corporate offices in the WDNY. All of the TLO and

Data Security employees, and all of the supervisors, managers, directors, and corporate officers relating to these departments, likewise work in the WDNY and, upon information and belief, live in the WDNY. Paychex's key witnesses from HRO, TLO, and Data Security are located in the WDNY.

20. "All data and records of HRO, TLO, and Data Security are located on servers in one of the eight corporate offices in Greater Rochester in the WDNY. Similarly, any data and records that Paychex has relating to the "Doggett Account" are located on servers in Paychex's corporate offices in Greater Rochester in the WDNY.

21. "Christal Laurro is a Paychex employee and works in a department located in Paychex's corporate office in West Henrietta, New York. Ms. Laurro's Supervisor as well as the Client Services and Operations Managers of her department are all at the corporate office in West Henrietta, New York. Likewise, the Director, Vice President, and Senior Vice President over this department are located at one of the corporate offices in the WDNY.

22. "The local Paychex branch referenced in Paragraph 9 of the Complaint is the main client interface for running payroll. The local branch did not and does not manage online access to services that are the subject of the Complaint.

23.    "If this matter is not transferred to the WDNY, it would create a hardship for Paychex.  It is more convenient for Paychex's employee witnesses for this litigation to take place in the WDNY.  In New York, Paychex's corporate and employee witnesses will be available to travel from home or the office to provide testimony when needed and with minimal disruption to Paychex's business operations.  On the other hand, it will be prohibitively expensive for Paychex to fly each witness from New York to Houston, and pay for lodging and transportation.  Flying each of these witnesses to Houston, where they will likely wait to testify, will also likely cause substantial disruption to the operation of Paychex's business.  It will be substantially cheaper and more convenient to produce these witnesses in the WDNY than in Houston, Texas.

24.    "If this matter is not transferred to the WDNY, it will also create a hardship on Paychex's Legal Department in managing the litigation from New York because it would likely require a significant amount of travel between New York and Texas."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 20, 2014.

_____
Amy L. Fici

1738139_6.docx / 3890.16

# EXHIBIT A-1

**Step 1: Read and complete this form.**

**Paychex Major Market Services Agreement**

Company Name: *Red Dog Rental Services* / *Doggett Machinery Services*
Office/Client Number *0472/N258*
Federal ID Number REDACTED *6 45*

This Paychex Major Market Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated by Client or by Paychex in accordance with the provisions contained in this Agreement.

1. **Services.** Client employs Paychex to provide Payroll services and the services initialed below ("Services"). All Services are described in the Product Terms and Conditions section of this Agreement. Paychex will not commence any of the Services until Paychex receives all documents necessary to begin each of the Services and notifies Client of the date Paychex will commence each of the Services ("Service Effective Date"). Client acknowledges that each of the Services may have separate Service Effective Dates and Paychex may commence performance for one (1) or more Services without obligating itself to commence all Services selected by Client. Until the Service Effective Date, Client will provide for itself, the Services requested of Paychex. Paychex assumes no responsibility for Services prior to the Service Effective Date.



| (INITIALS) | Preview® Rosting Service | (INITIALS) | Paychex® HR Online |
| (INITIALS) | Taxpay® (Includes SUI Support Service) | (INITIALS) | Paychex® Time and Labor Online |
| (INITIALS) | Taxpay® (without SUI Support Service) | (INITIALS) | Paychex® Expense Manager |
| (INITIALS) | State Unemployment Insurance Service (SUIS) | (INITIALS) | Employee Access Online (EAO) |
| (INITIALS) | Direct Deposit | (INITIALS) | Paychex® Online W-2 Service |
| (INITIALS) | Readychex® | (INITIALS) | Paperless Payroll |
| (INITIALS) | Check Signing | (INITIALS) | Paychex® Employee Screening Services |
| (INITIALS) | Check Insertion | (INITIALS) | COBRA Administration |
| (INITIALS) | Logo Service | (INITIALS) | Premium Only Plan (POP) |
| (INITIALS) | New Hire Reporting | (INITIALS) | Garnishment Payment Service |

Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services to be performed, nor will Paychex be deemed a fiduciary of Client or the employer or joint employer of Client's employees. Paychex will not be responsible for Client's compliance with, nor will Paychex provide legal or other financial advice to Client with respect to federal, state, and local statutes, regulations, or ordinances including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

Client understands that this Agreement (Rev. 5/10) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions set forth in sections 1-24 of this Agreement.

Authorized Officer's Name *Wm Leslie Doggett* Title *President*

Authorized Officer's Signature _____ Date *10/19/10*

## 2. Product Terms and Conditions.

**Payroll Services.** Paychex will process Client's payroll based solely on Client Information provided by Client, prepare payroll checks drawn on Client's bank account or as otherwise directed by Client in this Agreement, prepare payroll reports for each payroll processed by Client, and provide the payroll reports and checks and/or payroll check stubs to Client for review and distribution. Paychex will prepare payroll tax returns for taxes identified on the Payroll Cover Letter and deliver to Client for the Client to review, sign, and file. Paychex will not be responsible for the remittance of payroll taxes or other taxes or for the filing of tax returns for Clients who elect not to receive the Taxpay® service.

**Preview® Hosting Service.** Paychex will provide a hosting environment for Client to access the Paychex Preview software application ("Preview") through the Internet using a third party application as an alternative to installing Preview on Client's computer. Upon termination of the Preview Hosting Service or the Agreement, (i) Paychex will provide Client a copy of Client's payroll data stored in the hosted environment and a copy of the then current Preview software; and (ii) Client will continue to have access to Preview and Client's payroll data for fourteen (14) days. Use of Preview following termination will be subject to the then current Preview software licensing agreement.

**Taxpay® (includes SUI Support Service).** On or before Client's check date, Paychex will (i) process Electronic Funds Transfer (EFT) transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified in the Payroll Cover Letter Report; (ii) hold such amounts in a separate Paychex account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes that Paychex did not collect from Client. **SUI Support Service:** Paychex will provide Client with telephone support with state unemployment insurance claims, benefit charge questions, and pre-hearing preparation.

**Taxpay® (without SUI Support Service).** On or before Client's check date, Paychex will (i) process EFT transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified in the Payroll Cover Letter Report; (ii) hold such amounts in a separate Paychex account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes that Paychex did not collect from Client.

**State Unemployment Insurance Service (SUIS).** Paychex will provide the following services relating to unemployment insurance: claim and appeal processing, pre-hearing preparation, analytical review of voluntary contributions, and charge statement balancing. Client agrees to complete applicable Power of Attorney and Record of Address forms where needed. For an additional Fee, Client can request and authorize Paychex to appear and represent Client by telephone at any unemployment insurance hearing for a specified employee ("SUI Representation Service"), provided the state in which the hearing is being held will allow such representation. The SUI Representation Service will be performed only for any unemployment insurance hearing regarding the specified employee. By representing Client at any unemployment insurance hearing for the specified employee, Paychex is not acting as Client's attorney nor will Paychex provide Client legal advice. Paychex does not guarantee the outcome of the hearing. Paychex

expressly reserves the right to decline the Client's request to represent Client at the unemployment insurance hearing. Client expressly agrees that the SUI Representation Service will be performed pursuant, and subject to, the terms of the Agreement.

**Direct Deposit.** Paychex will process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds shall be deposited to employee accounts as specified. Certain accounts may have restrictions on deposits and withdrawals. Paychex is not responsible for determining whether an account is suitable for direct deposit of requested EFT transactions.

**Readychex®.** Paychex will (i) process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees; (ii) hold such amounts in an account established by Paychex until Client's check date; and (iii) draw checks payable to Client's employees on Client's check date and provide those checks to Client. Client shall distribute checks on check date or thereafter. Checks distributed to employees before check date will not be honored and it will be Client's responsibility to pay the employees. If Client's employee fails to present a check for payment within six (6) months of check date ("Stale Check"), Paychex will refund the amount debited for the Stale Check back to Client minus any balances owed by Client and charge a Fee for the transfer of the Stale Check funds back to Client. Client shall be solely responsible for remitting to its employee, or former employee, any amounts due and following any state unclaimed property laws in regards to outstanding employee funds. In the event that a Readychex check is lost, stolen, destroyed, or otherwise not able to be cashed ("Voidable Readychex") Client agrees to notify Paychex immediately and request the check to be voided. Client agrees to return any Voidable Readychex checks for which a refund has been requested or issued if it should be ultimately found or discovered. If the voided check is cashed, negotiated, or otherwise presented for payment, and the financial institution that the Readychex check is drawn upon requires a lost/stolen check affidavit, Client agrees that Client is responsible for producing the affidavit.

**Check Signing.** Paychex will use Client's signature to create a computer-generated facsimile that will display on each of Client's payroll checks each payday.

**Check Insertion.** Paychex will insert Client's signed checks into individual employee envelopes that will be sealed and returned to Client.

**Logo Service.** Paychex will use Client's logo to create a computer-generated facsimile that will display on each of Client's payroll checks. Client warrants that Client is the owner of any logo it authorizes Paychex to use, has full right and authority to use it on its payroll checks, and that such use does not violate any other party's rights.

**New Hire Reporting.** Paychex will report all new/rehired employee information that is mandated by federal and state regulations.

**Paychex® HR Online.** Paychex will provide Paychex HR Online, an Internet-based human resource information system, and Paychex eServices Update Agent, a PC based software program that enables the transfer of information between Paychex eServices products and Paychex' Preview payroll software. Paychex grants Client a royalty-free, nonexclusive, nontransferable license ("HR Online License") to use all computer programs and related documentation (collectively "Paychex HR Online Software") from the Web server location of Paychex' choice. Client agrees and acknowledges that the Paychex HR Online Software and its contents are not intended, and should not be

construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees. Client further authorizes Paychex to access Client's HR Online account to perform administrative functions as necessary to provide this service.

**Paychex Time and Labor Online (TLO).** Paychex will provide Paychex Time and Labor Online services, an Internet-based time and attendance system used for collecting time and earnings for import into payroll software. Paychex may require access to Client's computer systems and/or Client's TLO account to assist in configuration, provide ongoing support, and perform administrative functions necessary to provide the service and Client consents to and authorizes such access.

a.  **TLO License and Software.** Paychex grants Client a royalty-free, nonexclusive, nontransferable license ("TLO License") to use all computer programs and related documentation (collectively "TLO Software") from the Web server location chosen by Paychex. Client may only use the TLO Software in accordance with the terms of this Agreement. Access to the TLO Software will end upon termination of this Agreement, and Client agrees that all TLO Software rights remain the sole and exclusive property of Paychex.

b.  **TLO Leased Equipment.** In the event that Client leases Time Clocks and/or other equipment from Paychex ("Leased Equipment") Client agrees that (i) Leased Equipment is the sole and exclusive property of Paychex; (ii) Client has no right, title, or interest in any Leased Equipment except as stated in this Agreement, (iii) Client cannot transfer, sell, or in any way encumber Leased Equipment; (iv) Leased Equipment is not a fixture, and (v) Client will not allow any other party to file any lien or security interest on Leased Equipment. Upon demand by Paychex, Client agrees to deliver to Paychex any and all documents to protect or record Paychex' interest in Leased Equipment. If permitted by applicable law, Paychex may file any such documents or instruments signed only by Paychex.

    Client agrees (i) not to damage the Leased Equipment and, (ii) to return to Paychex all Leased Equipment in its original condition, normal wear and tear excepted, within ten (10) business days of termination of this Agreement. If Client fails to return the Leased Equipment in the time required, or damages the Leased Equipment beyond normal wear and tear, Client will be charged a Fee equivalent to the current retail price.

c.  **Fees.** Client agrees to make Fee payments for (i) the TLO services; and (ii) any Leased Equipment. The Fee for the Leased Equipment includes support and maintenance services.

d.  **Compliance with Applicable Law.** Client agrees that it shall be solely responsible for compliance with all applicable laws and regulations in connection with the use of TLO (TLO services, TLO Software, and any Leased Equipment or equipment purchased from Paychex) including, without limitation, state and federal wage and hour laws and regulations and laws relating to collection, storage and use of biometric information. Client agrees that the TLO services and TLO Software are not intended, and should not be construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees.

**Paychex[*] Expense Manager.** Paychex will provide Client with a hosted employee expense reimbursement system which allows Client to manage the reimbursement of employee expenses. Paychex may utilize a third party vendor to host the application. Client understands that reimbursements may be paid, at Client's election, via one or both of the following options: (i) through Client's payroll, or (ii) separate from payroll, through an EFT managed by the third party vendor. Clients electing to reimburse through EFT, separate from payroll, acknowledge that there is an additional setup fee and a fee for each EFT. The initial setup fee and per-transaction fee for reimbursement via EFT is not collected by Paychex but directly by the third party vendor or its agent. Client agrees that it shall execute and comply with any required documentation of the third party vendor or its agent prior to receiving reimbursement via EFT. Client acknowledges that there is no reconciliation of reimbursement data between Preview and Paychex Expense Manager.

**Employee Access Online (EAO).** Paychex will provide Client with a self-service, Internet-based Web site ("EAO Site") that gives Client's employees the ability to view and print their payroll check stubs, Forms W-2 and 1099-MISC. Paychex will provide paycheck calculators on the EAO Site for use by Client's employees. Client agrees and acknowledges that the EAO Site and its contents are not intended, and should not be construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees. Client further authorizes Paychex to access Client's EAO Site to perform administrative functions as necessary to provide this service.

**Paychex[*] Online W-2 Service.** Paychex will place Client's employees' Forms W-2 and 1099-MISC on a secure Web site for viewing and printing by Client.

**Paperless Payroll.** Paychex will suppress Client's employees' direct deposit check stubs and/or Client's payroll reports from printing. The Paperless Payroll service requires that Client have either Paychex HR Online or Employee Access Online. Client acknowledges that each state has separate laws and regulations governing Client's obligation to distribute payroll check stubs to its employees and/or to retain copies of payroll check stubs or the information on the payroll check stubs. Paychex shall not be responsible for Client's compliance with, nor shall it provide legal or other financial advice to Client with respect to federal, state, and local laws or ordinances governing the distribution or retention of payroll check stubs. Client is solely obligated to comply with any and all applicable federal, state, and local laws or ordinances governing the distribution or retention of payroll check stubs.

**Paychex[*] Employee Screening Services.** Client acknowledges that the Paychex Employee Screening Services are performed by a third party vendor of Paychex. Client agrees to remit payment directly to Paychex. Client will be eligible for such program so long as Client: (i) remains a Client of Paychex; (ii) complies with the terms of this Agreement; and (iii) executes and complies with the terms of any agreement the third party vendor shall require.

**COBRA Administration.** Paychex will perform certain federal COBRA and state continuation administrative functions for medical, dental, vision, or prescription drug coverage plans ("Eligible Plans") on Client's behalf ("COBRA Administration"). Client will identify Eligible Plans of its employees to Paychex, and Client will notify Paychex when an employee is (i) no longer on its payroll; (ii) terminated from coverage under the Eligible Plan; or (iii) receiving a reduced level of health care coverage under the Eligible Plan (collectively "Required Notifications"). Paychex will assist Client in determining if a matter is a qualifying event once Client provides Paychex with the Required Notifications and will begin COBRA Administration on Client's behalf, if required. If the qualified beneficiary subsequently elects COBRA coverage, Client will be solely responsible for submitting the premium for the qualified beneficiary directly to the Eligible Plan insurance carrier. The qualified beneficiary will be required to pay the monthly premium directly to Paychex and Paychex will reimburse Client the premium collected from the qualified beneficiary less an administrative Fee. Paychex receives

bank credits and/or earnings ("Earnings") from the premiums received. The amount of Earnings received by Paychex will fluctuate based on the average monthly balance of the premiums multiplied by the thirty (30)-day British London Interbank Offered Rate minus forty (40) basis points. Client acknowledges that Paychex may retain such Earnings as additional compensation for COBRA Administration under this Agreement. In the absence of Earnings, Client acknowledges that the other Fees paid to Paychex under this Agreement would be greater.

**Premium Only Plan (POP).** Paychex will act as Plan Service Provider for Client's Premium Only Plan. Paychex will provide Client with the following Plan installation documentation: (i) Basic Plan Document; (ii) Adoption Agreement; and (iii) Summary Plan Description. Client acknowledges that Client is responsible for (i) reviewing and signing the Adoption Agreement setting forth the terms and conditions of the Plan; and (ii) distributing the Summary Plan Description to Plan participants. Paychex will perform the calculations for the Key Employee Concentration Test. Client is solely responsible for all other testing. If Client has a Health Savings Account (HSA), the pretax salary reductions for Client's HSA will not be incorporated into the compliance testing results. Client will be solely responsible for any aggregate testing. Client acknowledges that if the Plan fails the testing as outlined above, the Client is responsible for correcting the failure and bringing the Plan into compliance with the applicable requirements as defined in section 125 of the Internal Revenue Code.

**Garnishment Payment Service.** Paychex will process EFT transactions, one banking day prior to Client's check date, for Client's employees' garnished wages as are necessary to remit to the appropriate entities. Client will provide Paychex with a garnishment order for each employee for whom wages are to be garnished. Paychex will hold garnished wages in a separate account established by Paychex until such time as the amounts are due. Client remains solely responsible for the correct calculation of the amount to garnish from its employees' wages.

**Additional Terms and Conditions.**

3. **Client Contacts.** Client will designate payroll contacts that will provide Paychex with information and directives necessary for Paychex to perform the Services (collectively "Client Information"). Client is responsible for the accuracy of Client Information provided by payroll contacts and/or Client.

4. **Client Information.** Client will execute and/or provide all documentation that Paychex requires to perform its responsibilities under the Agreement including, where necessary, taking all corporate action. Client acknowledges that Paychex may be required to obtain documents necessary to verify the identity of Client pursuant to applicable federal and/or state statutes or regulations. Client will provide Paychex with all necessary Client Information pertaining to Client's employees at least two (2) banking days prior to payroll check date. **Client acknowledges that Client is responsible for any delayed remittance of wages, taxes, garnishments, and additional processing Fees incurred as a result of its failure to provide Client Information timely. Paychex shall not be required to obtain authorization from Client to act on Client Information.**

5. **Reliance on Client Information.** Paychex will not be responsible for errors that result from Paychex' reliance on Client Information.

6. **Review Reports.** Client will review all reports and documents provided or made available by Paychex and inform Paychex of any inaccuracies within three (3) business days of receipt or availability.

7. **Software Licenses.** Client has received, or may receive, certain computer software relating to Services selected by Client, including, but not limited to, the Paychex HR Online Software and Paychex Time and Labor Online Software (collectively "Software"). Client agrees that in

the event that it does not accept all of the terms and conditions of any and all Paychex Software, and/or third-party Software, and any and all applicable license agreements provided to Client now or in the future, that Paychex will not be obligated to perform Services dependent upon the Software.

8. **Remit Reimbursement Amount.** Client agrees to remit funds to Paychex representing the amount due to pay Client's employees, remit taxes, or pay garnishments ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

9. **Payment of Fees.** Client will pay all fees, including but not limited to fees for all Paychex Services each pay period and the setup fees (collectively "Fees") through an EFT or such other method as required by Paychex when due. Minimum monthly Fees are due in the event Client fails to process a payroll or whose payroll fails to meet the minimum monthly charge during the month. Fees include minimum monthly, insufficient funds, and premium processing fees. Paychex' Fees are subject to change upon thirty (30) days written notification to Client. Paychex may, in its sole discretion, require a security deposit from Client, and Client waives any right to interest that may accrue on any amounts, including but not limited to, Reimbursement amounts, Fees, and security deposits received by Paychex.

10. **Electronic Funds Transfer.** If Paychex requires payment of Fees or Reimbursement Amounts (collectively "Amounts Due") through an EFT, Client (i) will execute all documentation needed by Paychex to originate EFT transactions and to verify availability of funds in Client's bank account; (ii) agrees that the funds representing the Amounts Due will be on deposit in Client's bank account in collectible form and in sufficient amount on the day Paychex' EFT is to be presented ("Funding Deadline"); and (iii) authorizes Paychex to collect all Amounts Due from Client's bank account on the Funding Deadline. All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA"). Client agrees (i) to follow NACHA as they are amended from time to time and assumes the responsibilities of an initiator of EFTs; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT. Client further agrees that it will notify Paychex, pursuant to applicable NACHA and federal regulations, if funding for Client's payroll is received from a foreign financial agency and of any employees with non-US addresses.

11. **Payment by Wire Transfer or Other Method.** If Paychex requires payment of Amounts Due by a wire transfer or other method, Client agrees to provide Paychex with all information necessary to confirm receipt of the payment prior to the Funding Deadline.

12. **Insufficient or Nonconfirmed Funds.** If sufficient funds are not available on the Funding Deadline, Paychex may take such action to collect Amounts Due, including, but not limited to, reissuance of the EFT and assessing insufficient funds Fees. **Client acknowledges that Client is responsible for any delay in remittance of wages, garnishments, or taxes, if Paychex is unable to confirm receipt of funds prior to the Funding Deadline.**

13. **Client's Default.** In the event of a Client default, Paychex may, at its sole option, terminate the Agreement, or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances or overpayments made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due, including, but not limited to, attorneys' fees (including in-house counsel), and court and arbitration costs.

Rev. 5/10

14. **Refund/Adjustment/Overpayment.** Client agrees that Paychex may apply any balances it is holding for Client to Amounts Due owed to Paychex or its affiliates. In the event Paychex remits an overpayment of payroll taxes, Paychex may, at its sole discretion, advance funds to Client. In the event Paychex advances overpayment funds to Client. Client agrees that it will reimburse Paychex for the overpayment within the sooner of five (5) days of (i) receiving the overpayment amount from the taxing authority; or (ii) being notified that the overpayment amount would be applied to an outstanding tax liability of Client; or (iii) the Agreement being terminated by either party.

15. **Termination.** Except as otherwise provided, either party may terminate the Agreement upon thirty (30) days prior written notice. Paychex may immediately terminate the Agreement, or a portion thereof, if: (i) Client becomes subject to receivership, bankruptcy, or is insolvent; (ii) Paychex, in its sole discretion, determines that a material adverse change has occurred in the financial condition of Client; (iii) Client fails to have sufficient funds on the Funding Deadline; or (iv) Paychex determines, in its sole discretion, that any federal, state, or local legislation, regulatory action, or judicial decision adversely affects its interests under the Agreement. Termination of the Agreement will not relieve Client of any obligations set forth herein, including, but not limited to, its payment obligations.

16. **Limit of Liability.** Paychex' sole liability and Client's sole remedy for Paychex' breach of the Agreement will be: (i) for Paychex to remit to the appropriate payee the funds received from Client; and/or (ii) for Paychex to reimburse Client or its employees for any interest or penalties assessed by taxing authorities as a direct result of Paychex' breach of the Agreement. Paychex can only be held liable for breach of the Agreement and will not be held liable for: (i) any negligent act or omission by Paychex; (ii) the negligence of any other person or entity, including, but not limited to, Client and its employees or agents, or any person or entity that provides services in connection with or as a result of Paychex' performance of its obligations under the Agreement; (iii) any loss, claim, or expense arising from any information provided or modified by Client, including, but not limited to, any Client forms, handbooks, manuals, and job descriptions; or (iv) Client's breach of NACHA. **Paychex will, under no circumstances, be liable for any special, indirect, incidental, or consequential or punitive damages, including lost profits incurred by Client pursuant to this Agreement or by the transactions contemplated by it, however caused, on any theory of liability (including contract, tort, or warranty), or as a result of Paychex' exercise of its rights under the Agreement, even if Paychex has been advised of the possibility of such damages.**

17. **Indemnification.** Client will indemnify, defend, and hold Paychex and its respective officers, directors, and employees harmless from any and all claims, costs, attorneys' fees (including in-house counsel fees), and expenses resulting from or arising in connection with: (i) a Client default; (ii) the use, misuse, reproduction, modification, or unauthorized distribution of Software; (iii) Client's breach of NACHA; or (iv) Client's breach of any warranty set forth in the Agreement.

18. **Copyright.** Paychex owns all rights, title, and interest, including, but not limited to, copyright, patent, trade secret, and all other intellectual property rights, in the Software and any changes, modifications, or corrections to the Software. If Client is ever held or deemed to be the owner of any copyright rights in the Software or any changes, modifications, or corrections to the Software, Client hereby irrevocably assigns to Paychex all such rights, title, and interest. Client agrees to execute all documents necessary to implement and confirm the letter and intent of this section. Client warrants to Paychex that it (i) has title or is authorized to use any symbol, logo, or mark uploaded by Client or Client's agents or printed on Client's handbooks and checks

(collectively "Client Material"); and (ii) has full right and authority to use Client Material, and such use does not violate any other party's rights.

19. **Confidentiality of Software.** Client acknowledges that the Software contains valuable trade secrets and confidential information owned by Paychex or third parties (collectively "Confidential Information"). Client agrees that Client, its employees, and its agents will not, directly or indirectly: (i) sell, lease, assign, sublicense, or otherwise transfer; (ii) duplicate, reproduce, or copy; (iii) disclose, divulge, or otherwise make available to any third party; (iv) use, except as authorized by this Agreement; or (v) decompile, disassemble, or otherwise analyze for reverse engineering purposes the Software or Confidential Information. Client will take appropriate action with Client's employees and agents to satisfy its obligations under this Agreement with respect to the use, protection, and security of Confidential Information. Client will notify Paychex immediately of any unauthorized use or disclosure of Confidential Information and will cooperate in remedying such unauthorized use or disclosure.

20. **Client Confidential Information.** "Client Confidential Information" will mean the name, social security number, date of birth, address, bank, and/or wage information of Client and Client's employees provided to Paychex by Client. Paychex will use reasonable care to prevent the disclosure of such Client Confidential Information to any unauthorized person or entity. Paychex may disclose Client Confidential Information to its employees, affiliates, subsidiaries, agents, and contractors to: (i) perform or offer Services; (ii) offer additional products or services; (iii) perform analysis to determine Client's qualification to receive future services; and (iv) collect Amounts Due and may disclose Client's payment experiences with Paychex to credit reporting agencies and supply vendor references of Client's behalf. Paychex may also disclose Client Confidential Information (i) to its attorneys, accountants, and auditors; and (ii) pursuant to federal, state, or local law, regulation, court order, legal process, or governmental investigation. The obligations set forth in this section will not apply to any Client Confidential Information that: (i) Client has agreed is free of any nondisclosure obligations; (ii) at the time of disclosure was free of any nondisclosure obligations; (iii) is independently developed by Paychex or that Paychex lawfully received, free of any nondisclosure obligations, from a third party having the right to furnish such Client Confidential Information; or (iv) is or becomes available to the public without any breach of this Agreement or unauthorized disclosure.

21. **Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client shall be governed exclusively by the laws of the State of New York without regard to, or application of, its conflict of laws, rules, and principles, except for the arbitration agreement contained herein which shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). **Except as provided herein, any dispute arising out of, or in connection with the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association.** Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement. A separate neutral arbitrator must be selected and appointed for each dispute. Any dispute arising under the Agreement will be brought within two (2) years of when the claim accrued. The arbitrator will not be authorized to award exemplary or punitive damages, or any damages excluded in the Limit of Liability provision. The parties will not be permitted to bring, or participate in, and the arbitrator will not have any authority or jurisdiction to hear or decide, any claims brought as any type of purported class action, coordinated action, aggregated action, or similar action or proceeding. Each party must only bring claims against each

other in their individual capacity. The parties agree that the prevailing party in arbitration, and any subsequent judicial proceeding to enforce an arbitration award, will be awarded costs and attorneys' fees (including in-house counsel fees) and that an arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex. Client waives any jurisdictional defenses and submits to the exclusive jurisdiction of the New York courts.

22. **Assignability.** Neither party may assign the Agreement to any third parties, other than successors, without the prior written consent of the other party. Any assignment made without such consent will be null and void.

23. **Fax Signature.** The parties agree that Client's signature on this Agreement may be transmitted to Paychex by facsimile, and the parties further agree that such fax copy(ies) will have the same force and effect as if the original signature had been provided and received.

24. **Miscellaneous.** The Agreement, along with any exhibits, addendums, schedules, and amendments, contains the entire understanding of the parties and supersedes all previous understandings and agreements between the parties for the Services provided, whether oral or written. Neither party will be responsible for any delay or failure to perform obligations specified in the Agreement due to causes beyond the party's reasonable control. Client acknowledges that there have been no representations or warranties made by Paychex or Client that are not set forth in the Agreement. Paychex may modify any term of the Agreement upon thirty (30) days written notice to Client of such change and the effective date thereof. Client will be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to Paychex prior to the effective date of the change and pursuant to the Termination provisions. If any provision of the Agreement or any portion thereof is held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of the Agreement will not in any way be affected or impaired. Sections 3-24 will survive the termination of the Agreement.

Rev. 5/10

Addendum

MMS Branch/Client Number __47.9__ / __N 258__

Company Name: W.L. Doggett  DBA Doggett Machinery Services, LLC
City____Baton Rouge_____ State __LA_____ Zip __70816__
Federal ID Number  **REDACTED** 645

The Parties hereby agree to amend and change the Paychex Major Market Services Agreement between Client and Paychex dated __12__ / __14__ / __10__ ("Agreement"), as follows:

1.      Section 16 of the Agreement is hereby amended to read in its entirety as follows.

16.    Limit of Liability. A   Paychex Responsibility   Paychex shall correct any Client report, data or tax agency filings, as the case may be, produced incorrectly as a result of a Paychex error, at no charge to Client. Additionally, Paychex shall reimburse Client for (i) actual damages incurred by Client as a direct result of the criminal or fraudulent acts or willful misconduct of Paychex or any of its employees, (ii) any penalty imposed against Client as a result of an error or omission made by Paychex in performing the Tax Filing Services or (iii) any interest assessed against Client as a result of Paychex holding Client tax funds past the applicable due date due as a result of an error or omission made by Paychex in performing the Tax Filing Services   Paychex shall have no liability to Client for any third-party software that may be accessed by Paychex internet services   In addition, Paychex shall defend, indemnify and hold Client harmless from and against any third party claim that any software or other materials provided by Paychex and used by Client in accordance with any applicable license or other terms and conditions infringes the intellectual property rights of any third party, provided that Client promptly notifies Paychex in the event that Client becomes aware of any such claim or threatened claim

B   Limit on Monetary Damages.  Notwithstanding anything to the contrary contained in this Agreement (other than and subject to Section 16.A. above)  Paychex' aggregate liability under this Agreement during any calendar year for damages (monetary or otherwise) under any circumstances for claims of any type or character made by Client or any third party arising from or related to Paychex Products or Services, will be limited to the lesser of (i) the amount of actual damages incurred by Client or (ii) the average monthly charges for three (3) months for the affected Paychex Products of Services during such calendar year  Paychex will issue Client a credit(s) equal to the applicable amount and any such credit(s) will be applied against subsequent fees owed by Client.

C   No Consequential Damages.  NEITHER PAYCHEX NOR CLIENT WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR OTHER SIMILAR DAMAGES (INCLUDING WITHOUT LIMITATION ANY LOST PROFITS OR DAMAGES FOR BUSINESS





INTERRUPTION OR: LOSS OF INFORMATION) THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES OR PAYCHEX PRODUCTS, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBLITY OF SUCH DAMAGES."

THIS ADDENDUM IS NOT INTENDED TO MODIFY OR REPLACE ANY OTHER PROVISION OF THE MMS AGREEMENT, EXCEPT FOR CHANGES TO THE SECTIONS SET FORTH ABOVE.

Client Authorized Officer's Name _Wm Leslie Doggett_   Title _Pres_

Client Authorized Officer's Signature _____   Date _10/19/10_

Paychex Authorized Officer's Name _Michael McCarthy_   Title _VP MMS Sales_

Paychex Authorized Officer's Signature _____   Date _____

# EXHIBIT A-2

**Paychex® Human Resource Services Agreement**

Company Name

| Doggett Machinery Services LLC |

Office-Client Number | 0472 | -

Federal ID Number: | REDACTED 645 |

## Flexible Spending Account (FSA)

a. **Plan Documents.** Paychex will act as Plan Service Provider for Client's FSA Plan. Paychex will provide Client with the following Plan installation documentation: (i) Basic Plan Document; (ii) Adoption Agreement; and (iii) Summary Plan Description. Client acknowledges that Client is responsible for (i) reviewing and signing the Adoption Agreement setting forth the terms and conditions of the Plan; and (ii) distributing the Summary Plan Description to Plan participants.

b. **Compliance Testing.** Paychex will perform the calculations for the Key Employee Concentration Test, Average Benefits Test, and Owner's Test (if applicable). If Client has a Health Savings Account (HSA), the pretax salary reductions for Client's HSA will not be incorporated into the compliance testing results. Client will be solely responsible for any aggregate testing. Client acknowledges that if the Plan fails the testing as outlined above, the Client is responsible for correcting the failure and bringing the Plan into compliance with the applicable requirements as defined in section 125 of the Internal Revenue Code.

c. **Claim Reimbursement.** Paychex will review participant General Purpose FSA claims for reimbursement pursuant to the Plan. In the event that Client has an HSA, the FSA shall be considered a Limited Purpose FSA and participants are restricted to submitting claims to the Limited Purpose FSA as authorized under the then current Internal Revenue Code. Paychex shall not review claims submitted by participants to the Limited Purpose FSA to determine whether the submitted claim is an authorized reimbursement under a Limited Purpose FSA or whether the claim should have been submitted through the HSA. The participant is solely responsible for maintaining their eligibility under the HSA.

d. **Direct Deposit for FSA Reimbursement.** Paychex will provide direct deposit capability for FSA reimbursements for Client's employees. If Client's employees use direct deposit for FSA reimbursements, Paychex will process EFTs, or such other payment methods as Paychex may require, for such amounts as are necessary to reimburse Client's employees for FSA claims. All debited amounts are held in an account established by Paychex for approximately three (3) business days until funds are deposited to employees' accounts as specified by each employee. Any credit or interest earned on said funds will be applied to administrative costs of Paychex.

e. **FSA Debit Card.** Paychex will provide Client access to a stored value processing system provided by a third party vendor. Client's employees who elect to utilize the Paychex FSA Debit Card ("FSA Debit Card Users") will have access to their flexible spending accounts in accordance with a cardholder agreement executed by the FSA Debit Card User with the third party vendor. Client authorizes Paychex to provide to its agents and subcontractors information pertaining to Client and Client's employees who elect to utilize the FSA Debit Card as is necessary to provide the FSA Debit Card Service. The FSA Debit Card may only be used at specified locations and for certain services or items. FSA Debit Card Users will be required to provide Paychex with back up documentation. In the event that Client's employees fail to provide substantiation of their claim, or if an expense is ineligible, Client will be solely responsible for recouping from its employees any money used for these expenses. Paychex will process EFT transactions from Client's designated bank account for such amounts as are necessary to pay Client's employees for authorized items purchased using their FSA Debit Card. Client will provide Paychex with information pertaining to co-pays, if any, that its employees pay. Upon receipt of co-pay information, Paychex may adjudicate claims that match the co-pays without requiring additional paperwork in most instances, based solely on merchant terminal coding. Client will update co-pay information in the event it changes. Client will provide Paychex with the company's plan information.

f. **Additional Client Obligations.** Client will identify employees who are classified as Owners, Highly Compensated Employees (HCEs), and Key Employees at the time of setup, and promptly provide Paychex with any changes pertaining to the identity of Owners, HCEs, and Key Employees.

g. **Cancellation of Plan.** If the Plan is cancelled by Client in writing after Paychex has completed its initial processing of the submitted Plan, but prior to Client's first payroll that includes Plan contributions, the greater of 50% or $500 of the setup fee will be retained by Paychex. All setup fees are non-refundable after Client's first payroll that includes Plan contributions.

h. **Termination of Agreement and Claim Reimbursement.** In the event that the Agreement is terminated, Paychex may, at its sole option, provide the Client the option of continuing the claims reimbursement service for the close out period specified by the Client (30, 60, or 90 days) for an additional fee ("Post Termination FSA Claims Service"). In the event Client elects to purchase the Post Termination FSA Claims Service for less than ninety (90) days, Client agrees that it is solely responsible for performing any FSA claims reimbursements required by the Client's FSA Plan or by law following the completion of the Post Termination FSA Claims Service.

## Terms and Conditions

1. **Term of Agreement.** This Paychex® Human Resource Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated by Client or by Paychex in accordance with the provisions of this Agreement.

2. **Service Effective Date.** Paychex will not commence any of the services until Paychex receives all documents necessary to begin the services and notifies Client of the date Paychex will commence each of the services ("Service Effective Date"). Client acknowledges that each service may have separate Service Effective Dates. **Until the Service Effective Date, Client will provide for itself the Services requested of Paychex. Paychex assumes no responsibility for Services prior to the Service Effective Date.**

3. **Services to be Performed.** Paychex will provide the services initialed in this Agreement ("Services"). **Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services, nor will Paychex be deemed a fiduciary of Client, or the employer or joint employer of the Client's employees.** Paychex will not be responsible for Client's compliance with, nor will it provide legal or other financial advice to Client, with respect to federal, state, or local statutes, regulations, or ordinances including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

4. **Client Contacts.** Client will designate payroll contacts that will provide Paychex with information and directives necessary for Paychex to perform the Services (collectively "Client Information"). Client is responsible for the accuracy of Client Information provided by payroll

contacts and/or Client.

5. **Client Information.** Client will execute and/or provide all documentation that Paychex requires to perform its responsibilities under the Agreement including, where necessary, taking all corporate action. Client acknowledges that Paychex may be required to obtain documents necessary to verify the identity of Client pursuant to applicable federal and/or state statutes or regulations. Client will provide Paychex with all necessary Client Information pertaining to Client's employees at least two banking days prior to a payroll check date. **Failure to provide Client Information timely may result in delayed remittance of FSA reimbursements and additional processing fees. Paychex will not be required to obtain authorization from Client to act on Client Information.**

6. **Reliance on Client Information.** Paychex will not be responsible for errors that result from Paychex' reliance on Client Information.

7. **Review Reports.** Client will review all reports and documents provided by Paychex and inform Paychex of any inaccuracies within three (3) business days of receipt.

8. **Payment of Fees.** Client will pay the fees for all Paychex services and the setup fees through an Electronic Funds Transfer (EFT), or such other payment method as required by Paychex when due (collectively "Fees"). Paychex' Fees are subject to change at any time upon thirty (30) days written notification to Client. Paychex may, in its sole discretion, require a security deposit from Client. Client hereby waives any right to interest that may accrue on any amounts, including, but not limited to, Fees and security deposit received by Paychex.

9. **Remit Reimbursement Amounts.** Client agrees to remit funds to Paychex representing the amount due to reimburse Client's employees for FSA claims ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

10. **Electronic Funds Transfer.** If Paychex requires payment of Fees or Reimbursement Amounts (collectively "Amounts Due") through an EFT, Client (i) will execute all documentation needed by Paychex to originate EFT transactions; (ii) agrees that the funds representing the Amounts Due will be on deposit in Client's bank account in collectible form and in sufficient amount on the day Paychex' EFT is to be presented ("Funding Deadline"); and (iii) authorizes Paychex to collect all Amounts Due from Client's bank account on the Funding Deadline. All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA"). Client agrees (i) to follow NACHA as they are amended from time to time; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT.

11. **Payment by Wire Transfer or Other Method.** If Paychex requires payment of Amounts Due by a wire transfer or other method, Client agrees to provide Paychex with all information necessary to confirm receipt of the payment, including, but not limited to, financial institution information and confirmation numbers prior to the Funding Deadline.

12. **Insufficient or Nonconfirmed Funds.** If sufficient funds are not available on the Funding Deadline, Paychex may take such action to collect Amounts Due, including, but not limited to, reissuance of the EFT. **If Paychex is unable to confirm receipt of funds prior to the Funding Deadline, remittance of FSA reimbursements may be delayed.**

13. **Client's Default.** In the event of a Client Default, Paychex may, at its sole option, terminate the Agreement or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due including, but not limited to, attorneys' fees (including in-house counsel) and court and arbitration costs.

14. **Refund/Adjustments.** Client agrees that Paychex may apply any balances it is holding for Client to Amounts Due owed to Paychex or its affiliates.

15. **Termination.** Except as otherwise provided, either party may terminate the Agreement upon thirty (30) days prior written notice. Paychex may immediately terminate the Agreement, or a portion thereof if: (i) Client becomes subject to receivership, bankruptcy, or is insolvent; (ii) Paychex, in its sole discretion, determines that a material adverse change has occurred in the financial condition of Client; (iii) Client fails to have sufficient funds on the Funding Deadline; or (iv) Paychex determines, in its sole discretion, that any federal, state, or local legislation, regulatory action, or judicial decision adversely affects its interests under the Agreement. Termination of the Agreement will not relieve Client of any obligations set forth herein, including, but not limited to, its payment obligations.

16. **Limit of Liability.** Paychex' sole liability and Client's sole remedy for Paychex' breach of the Agreement will be: (i) for Paychex to remit to the appropriate payee the funds received from Client; and/or (ii) for Paychex to reimburse Client or its employees for any interest or penalties assessed as a direct result of Paychex' breach of the Agreement. Paychex will not be held liable for (i) the negligence of any other person or entity, including, but not limited to, Client and its employees or agents, or any person or entity that provides services in connection with or as a result of Paychex' performance of its obligations under the Agreement; (ii) any loss, claim, or expense arising from any information provided or modified by Client, including, but not limited to, any Client forms, handbooks, manuals, and job descriptions; or (iii) Client's breach of NACHA. **Paychex will, under no circumstances, be liable for any special, indirect, incidental, or consequential damages that Client may incur as a result of Paychex' breach of the Agreement, or as a result of Paychex' exercise of its rights under the Agreement, even if Paychex has been advised of the possibility of such damages.**

17. **Indemnification.** Client will indemnify, defend, and hold Paychex and its respective officers, directors, and employees harmless from any and all claims, costs, attorneys' fees (including in-house counsel fees), and expenses resulting from or arising in connection with (i) a Client Default; (ii) Client's breach of NACHA; or (iii) Client's breach of any warranty set forth in the Agreement.

18. **Client Confidential Information.** "Client Confidential Information" will mean the name, social security number, address, bank, and wage information of Client and Client's employees provided to Paychex by Client. Paychex will use reasonable care to prevent the disclosure of such Client Confidential Information to any unauthorized person or entity. Paychex may disclose Client Confidential Information to its employees, affiliates, subsidiaries, agents, and contractors to: (i) perform Services; (ii) offer additional products or services; (iii) perform analysis to determine Client's qualification to receive future services; and (iv) collect Fees. Paychex may disclose Client's payment experiences with Paychex to credit reporting agencies and supply vendor references on behalf of the Client. Paychex may also disclose Client Confidential Information (i) to its attorneys, accountants, and auditors; and (ii) pursuant to federal, state, or local law, regulation, court order, legal process, or governmental investigation. The obligations set forth in this section will not apply to any Client Confidential Information that: (i) Client has agreed is free of any nondisclosure obligations; (ii) at the time of disclosure was free of any nondisclosure obligations; (iii) is independently developed by Paychex or that Paychex lawfully received, free of any nondisclosure obligations, from a third party having the right to furnish such Client Confidential Information; or (iv) is or becomes available to the public without any breach of this Agreement or unauthorized disclosure.

19. **Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client will be governed exclusively by the laws of the State of New York without regard to or application of its conflict of laws rules and principles, except for the arbitration agreement contained herein that will be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). **Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association.** Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement. A separate neutral arbitrator must be selected and appointed for each dispute. Any dispute arising under the Agreement shall be brought within two (2) years of when the claim accrued. The arbitrator will not be authorized to award exemplary or punitive damages. The Parties will not be permitted to bring or participate in, and the arbitrator will not have any authority or jurisdiction to hear or decide, any claims brought as any type of purported class action, representative action, collective action, consolidated action, coordinated action, aggregated action, or similar action or proceeding. Each party must only bring claims against each other in their individual capacity. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex. Client waives any jurisdictional defenses and submits to the exclusive jurisdiction of the New York courts. The parties agree that the prevailing party in arbitration, and any subsequent judicial proceeding to enforce an arbitration award, will be awarded costs and attorneys' fees (including in-house counsel fees) and that an arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement.

20. **Assignability.** The Client may not assign the Agreement to any third parties, other than successors, without the prior written consent of Paychex. Any assignment made without such consent will be null and void.

21. **Fax Signature.** The parties agree that Client's signature on this Agreement may be transmitted to Paychex by facsimile, and that such faxed copy(ies) will have the same force and effect as if the original signature had been provided and received.

22. **Miscellaneous.** The Agreement contains the entire understanding of the parties. Neither party will be responsible for any delay or failure to perform obligations specified in the Agreement due to causes beyond the party's reasonable control. Client acknowledges that there have been no representations or warranties made by Paychex or Client that are not set forth in the Agreement. Paychex may modify any term of the Agreement upon thirty (30) days written notice to Client of such change and the effective date thereof. Client will be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to Paychex prior to the effective date of the change. If any provision of the Agreement or any portion thereof will be held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of the Agreement will not in any way be affected or impaired. Sections 1-22 will survive the termination of the Agreement.

Client understands that this Agreement (Rev. 01/09) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions of this Agreement.

Authorized Officer's Name: Wm Leslie Doggett     Title: President

Authorized Officer's Signature: _(signature)_     Date: 10/27/10

Rev 01/09

# EXHIBIT A-3

**Step 1: Read and complete this form.**

**Paychex Major Market
Services Agreement**

Company Name _Doggett Heavy Machinery Services_ Houston

Office/Client Number _____

Federal ID Number **REDACTED** 2 20

This Paychex Major Market Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated by Client or by Paychex in accordance with the provisions contained in this Agreement.

1. **Services.** Client employs Paychex to provide Payroll services and the services initialed below ("Services"). All Services are described in the Product Terms and Conditions section of this Agreement. Paychex will not commence any of the Services until Paychex receives all documents necessary to begin each of the Services and notifies Client of the date Paychex will commence each of the Services ("Service Effective Date"). Client acknowledges that each of the Services may have separate Service Effective Dates and Paychex may commence performance for one (1) or more Services without obligating itself to commence all Services selected by Client. Until the Service Effective Date, Client will provide for itself, the Services requested of Paychex. Paychex assumes no responsibility for Services prior to the Service Effective Date.

- _(initials)_ **Preview® Hosting Service**
- _(initials)_ **Taxpay® (Includes SUI Support Service)**
- _(initials)_ **Taxpay® (without SUI Support Service)**
- _(initials)_ **State Unemployment Insurance Service (SUIS)**
- _(initials)_ **Direct Deposit**
- _(initials)_ **Readychex®**
- _(initials)_ **Check Signing**
- _(initials)_ **Check Insertion**
- _(initials)_ **Logo Service**
- _(initials)_ **New Hire Reporting**

- _(initials)_ **Paychex® HR Online**
- _(initials)_ **Paychex® Time and Labor Online**
- _(initials)_ **Paychex® Expense Manager**
- _(initials)_ **Employee Access Online (EAO)**
- _(initials)_ **Paychex® Online W-2 Service**
- _(initials)_ **Paperless Payroll**
- _(initials)_ **Paychex® Employee Screening Services**
- _(initials)_ **COBRA Administration**
- _(initials)_ **Premium Only Plan (POP)**
- _(initials)_ **Garnishment Payment Service**

Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services to be performed, nor will Paychex be deemed a fiduciary of Client or the employer or joint employer of Client's employees. Paychex will not be responsible for Client's compliance with, nor will Paychex provide legal or other financial advice to Client with respect to federal, state, and local statutes, regulations, or ordinances including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

Client understands that this Agreement (Rev. 5/10) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions set forth in sections 1-24 of this Agreement.

Authorized Officer's Name _Wm Leslie Doggett_    Title _Pricy dit_

Authorized Officer's Signature _____    Date _10/17/10_

2. **Product Terms and Conditions.**

**Payroll Services.** Paychex will process Client's payroll based solely on Client Information provided by Client, prepare payroll checks drawn on Client's bank account or as otherwise directed by Client in this Agreement, prepare payroll reports for each payroll processed by Client, and provide the payroll reports and checks and/or payroll check stubs to Client for review and distribution. Paychex will prepare payroll tax returns for taxes identified on the Payroll Cover letter and deliver to Client for the Client to review, sign, and file. Paychex will not be responsible for the remittance of payroll taxes or other taxes or for the filing of tax returns for Clients who elect not to receive the Taxpay® service.

**Preview® Hosting Service.** Paychex will provide a hosting environment for Client to access the Paychex Preview software application ("Preview") through the Internet using a third party application as an alternative to installing Preview on Client's computer. Upon termination of the Preview Hosting Service or the Agreement, (i) Paychex will provide Client a copy of Client's payroll data stored in the hosted environment and a copy of the then current Preview software; and (ii) Client will continue to have access to Preview and Client's payroll data for fourteen (14) days. Use of Preview following termination will be subject to the then current Preview software licensing agreement.

**Taxpay® (includes SUI Support Service).** On or before Client's check date, Paychex will (i) process Electronic Funds Transfer (EFT) transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified in the Payroll Cover Letter Report; (ii) hold such amounts in a separate Paychex account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes that Paychex did not collect from Client. **SUI Support Service:** Paychex will provide Client with telephone support with state unemployment insurance claims, benefit charge questions, and pre-hearing preparation.

**Taxpay® (without SUI Support Service).** On or before Client's check date, Paychex will (i) process EFT transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified in the Payroll Cover Letter Report; (ii) hold such amounts in a separate Paychex account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes that Paychex did not collect from Client.

**State Unemployment Insurance Service (SUIS).** Paychex will provide the following services relating to unemployment insurance: claim and appeal processing, pre-hearing preparation, analytical review of voluntary contributions, and charge statement balancing. Client agrees to complete applicable Power of Attorney and Record of Address forms where needed. For an additional Fee, Client can request and authorize Paychex to appear and represent Client by telephone at any unemployment insurance hearing for a specified employee ("SUI Representation Service"), provided the state in which the hearing is being held will allow such representation. The SUI Representation Service will be performed only for any unemployment insurance hearing regarding the specified employee. By representing Client at any unemployment insurance hearing for the specified employee, Paychex is not acting as Client's attorney nor will Paychex provide Client legal advice. Paychex does not guarantee the outcome of the hearing. Paychex

expressly reserves the right to decline the Client's request to represent Client at the unemployment insurance hearing. Client expressly agrees that the SUI Representation Service will be performed pursuant, and subject to, the terms of the Agreement.

**Direct Deposit.** Paychex will process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds shall be deposited to employee accounts as specified. Certain accounts may have restrictions on deposits and withdrawals. Paychex is not responsible for determining whether an account is suitable for direct deposit of requested EFT transactions.

**Readychex®.** Paychex will (i) process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees; (ii) hold such amounts in an account established by Paychex until Client's check date; and (iii) draw checks payable to Client's employees on Client's check date and provide those checks to Client. Client shall distribute checks on check date or thereafter. Checks distributed to employees before check date will not be honored and it will be Client's responsibility to pay the employees. If Client's employee fails to present a check for payment within six (6) months of check date ("Stale Check"), Paychex will refund the amount debited for the Stale Check back to Client minus any balances owed by Client and charge a Fee for the transfer of the Stale Check funds back to Client. Client shall be solely responsible for remitting to its employee, or former employee, any amounts due and following any state unclaimed property laws in regards to outstanding employee funds. In the event that a Readychex check is lost, stolen, destroyed, or otherwise not able to be cashed ("Voidable Readychex") Client agrees to notify Paychex immediately and request the check to be voided. Client agrees to return any Voidable Readychex checks for which a refund has been requested or issued if it should be ultimately found or discovered. If the voided check is cashed, negotiated, or otherwise presented for payment, and the financial institution that the Readychex check is drawn upon requires a lost/stolen check affidavit, Client agrees that Client is responsible for producing the affidavit.

**Check Signing.** Paychex will use Client's signature to create a computer-generated facsimile that will display on each of Client's payroll checks each payday.

**Check Insertion.** Paychex will insert Client's signed checks into individual employee envelopes that will be sealed and returned to Client.

**Logo Service.** Paychex will use Client's logo to create a computer-generated facsimile that will display on each of Client's payroll checks. Client warrants that Client is the owner of any logo it authorizes Paychex to use, has full right and authority to use it on its payroll checks, and that such use does not violate any other party's rights.

**New Hire Reporting.** Paychex will report all new/rehired employee information that is mandated by federal and state regulations.

**Paychex® HR Online.** Paychex will provide Paychex HR Online, an Internet-based human resource information system, and Paychex eServices Update Agent, a PC based software program that enables the transfer of information between Paychex eServices products and Paychex' Preview payroll software. Paychex grants Client a royalty-free, nonexclusive, nontransferable license ("HR Online License") to use all computer programs and related documentation (collectively "Paychex HR Online Software") from the Web server location of Paychex' choice. Client agrees and acknowledges that the Paychex HR Online Software and its contents are not intended, and should not be

 Rev. 5/10

construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees. Client further authorizes Paychex to access Client's HR Online account to perform administrative functions as necessary to provide this service.

**Paychex Time and Labor Online (TLO).** Paychex will provide Paychex Time and Labor Online services, an Internet-based time and attendance system used for collecting time and earnings for import into payroll software. Paychex may require access to Client's computer systems and/or Client's TLO account to assist in configuration, provide ongoing support, and perform administrative functions necessary to provide the service and Client consents to and authorizes such access.

a.   **TLO License and Software.** Paychex grants Client a royalty-free, nonexclusive, nontransferable license ("TLO License") to use all computer programs and related documentation (collectively "TLO Software") from the Web server location chosen by Paychex. Client may only use the TLO Software in accordance with the terms of this Agreement. Access to the TLO Software will end upon termination of this Agreement, and Client agrees that all TLO Software rights remain the sole and exclusive property of Paychex.

b.   **TLO Leased Equipment.** In the event that Client leases Time Clocks and/or other equipment from Paychex ("Leased Equipment") Client agrees that (i) Leased Equipment is the sole and exclusive property of Paychex; (ii) Client has no right, title, or interest in any Leased Equipment except as stated in this Agreement, (iii) Client cannot transfer, sell, or in any way encumber Leased Equipment; (iv) Leased Equipment is not a fixture, and (v) Client will not allow any other party to file any lien or security interest on Leased Equipment. Upon demand by Paychex, Client agrees to deliver to Paychex any and all documents to protect or record Paychex' interest in Leased Equipment. If permitted by applicable law, Paychex may file any such documents or instruments signed only by Paychex.

Client agrees (i) not to damage the Leased Equipment and, (ii) to return to Paychex all Leased Equipment in its original condition, normal wear and tear excepted, within ten (10) business days of termination of this Agreement. If Client fails to return the Leased Equipment in the time required, or damages the Leased Equipment beyond normal wear and tear, Client will be charged a Fee equivalent to the current retail price.

c.   **Fees.** Client agrees to make Fee payments for (i) the TLO services; and (ii) any Leased Equipment. The Fee for the Leased Equipment includes support and maintenance services.

d.   **Compliance with Applicable Law.** Client agrees that it shall be solely responsible for compliance with all applicable laws and regulations in connection with the use of TLO (TLO services, TLO Software, and any Leased Equipment or equipment purchased from Paychex) including, without limitation, state and federal wage and hour laws and regulations and laws relating to collection, storage and use of biometric information. Client agrees that the TLO services and TLO Software are not intended, and should not be construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees.

**Paychex® Expense Manager.** Paychex will provide Client with a hosted employee expense reimbursement system which allows Client to manage the reimbursement of employee expenses. Paychex may utilize a third party vendor to host the application. Client understands that reimbursements may be paid, at Client's election, via one or both of the following options: (i) through Client's payroll, or (ii) separate from payroll, through an EFT managed by the third party vendor. Clients

electing to reimburse through EFT, separate from payroll, acknowledge that there is an additional setup fee and a fee for each EFT. The initial setup fee and per-transaction fee for reimbursement via EFT is not collected by Paychex but directly by the third party vendor or its agent. Client agrees that it shall execute and comply with any required documentation of the third party vendor or its agent prior to receiving reimbursement via EFT. Client acknowledges that there is no reconciliation of reimbursement data between Preview and Paychex Expense Manager.

**Employee Access Online (EAO).** Paychex will provide Client with a self-service, Internet-based Web site ("EAO Site") that gives Client's employees the ability to view and print their payroll check stubs, Forms W-2 and 1099-MISC. Paychex will provide paycheck calculators on the EAO Site for use by Client's employees. Client agrees and acknowledges that the EAO Site and its contents are not intended, and should not be construed, as providing legal or financial advice and that Paychex is not acting in a fiduciary capacity on behalf of Client or Client's employees. Client further authorizes Paychex to access Client's EAO Site to perform administrative functions as necessary to provide this service.

**Paychex® Online W-2 Service.** Paychex will place Client's employees' Forms W-2 and 1099-MISC on a secure Web site for viewing and printing by Client.

**Paperless Payroll.** Paychex will suppress Client's employees' direct deposit check stubs and/or Client's payroll reports from printing. The Paperless Payroll service requires that Client have either Paychex HR Online or Employee Access Online. Client acknowledges that each state has separate laws and regulations governing Client's obligation to distribute payroll check stubs to its employees and/or to retain copies of payroll check stubs or the information on the payroll check stubs. Paychex shall not be responsible for Client's compliance with, nor shall it provide legal or other financial advice to Client with respect to federal, state, and local laws or ordinances governing the distribution or retention of payroll check stubs. Client is solely obligated to comply with any and all applicable federal, state, and local laws or ordinances governing the distribution or retention of payroll check stubs.

**Paychex® Employee Screening Services.** Client acknowledges that the Paychex Employee Screening Services are performed by a third party vendor of Paychex. Client agrees to remit payment directly to Paychex. Client will be eligible for such program so long as Client: (i) remains a Client of Paychex; (ii) complies with the terms of this Agreement; and (iii) executes and complies with the terms of any agreement the third party vendor shall require.

**COBRA Administration.** Paychex will perform certain federal COBRA and state continuation administrative functions for medical, dental, vision, or prescription drug coverage plans ("Eligible Plans") on Client's behalf ("COBRA Administration"). Client will identify Eligible Plans of its employees to Paychex, and Client will notify Paychex when an employee is (i) no longer on its payroll; (ii) terminated from coverage under the Eligible Plan; or (iii) receiving a reduced level of health care coverage under the Eligible Plan (collectively "Required Notifications"). Paychex will assist Client in determining if a matter is a qualifying event once Client provides Paychex with the Required Notifications and will begin COBRA Administration on Client's behalf, if required. If the qualified beneficiary subsequently elects COBRA coverage, Client will be solely responsible for submitting the premium for the qualified beneficiary directly to the Eligible Plan insurance carrier. The qualified beneficiary will be required to pay the monthly premium directly to Paychex and Paychex will reimburse Client the premium collected from the qualified beneficiary less an administrative Fee. Paychex receives

bank credits and/or earnings ("Earnings") from the premiums received. The amount of Earnings received by Paychex will fluctuate based on the average monthly balance of the premiums multiplied by the thirty (30)-day British London Interbank Offered Rate minus forty (40) basis points. Client acknowledges that Paychex may retain such Earnings as additional compensation for COBRA Administration under this Agreement. In the absence of Earnings, Client acknowledges that the other Fees paid to Paychex under this Agreement would be greater.

**Premium Only Plan (POP).** Paychex will act as Plan Service Provider for Client's Premium Only Plan. Paychex will provide Client with the following Plan installation documentation: (i) Basic Plan Document; (ii) Adoption Agreement; and (iii) Summary Plan Description. Client acknowledges that Client is responsible for (i) reviewing and signing the Adoption Agreement setting forth the terms and conditions of the Plan; and (ii) distributing the Summary Plan Description to Plan participants. Paychex will perform the calculations for the Key Employee Concentration Test. Client is solely responsible for all other testing. If Client has a Health Savings Account (HSA), the pretax salary reductions for Client's HSA will not be incorporated into the compliance testing results. Client will be solely responsible for any aggregate testing. Client acknowledges that if the Plan fails the testing as outlined above, the Client is responsible for correcting the failure and bringing the Plan into compliance with the applicable requirements as defined in section 125 of the Internal Revenue Code.

**Garnishment Payment Service.** Paychex will process EFT transactions, one banking day prior to Client's check date, for Client's employees' garnished wages as are necessary to remit to the appropriate entities. Client will provide Paychex with a garnishment order for each employee for whom wages are to be garnished. Paychex will hold garnished wages in a separate account established by Paychex until such time as the amounts are due. Client remains solely responsible for the correct calculation of the amount to garnish from its employees' wages.

### Additional Terms and Conditions.

**3. Client Contacts.** Client will designate payroll contacts that will provide Paychex with information and directives necessary for Paychex to perform the Services (collectively "Client Information"). Client is responsible for the accuracy of Client Information provided by payroll contacts and/or Client.

**4. Client Information.** Client will execute and/or provide all documentation that Paychex requires to perform its responsibilities under the Agreement including, where necessary, taking all corporate action. Client acknowledges that Paychex may be required to obtain documents necessary to verify the identity of Client pursuant to applicable federal and/or state statutes or regulations. Client will provide Paychex with all necessary Client Information pertaining to Client's employees at least two (2) banking days prior to payroll check date. **Client acknowledges that Client is responsible for any delayed remittance of wages, taxes, garnishments, and additional processing Fees incurred as a result of its failure to provide Client Information timely. Paychex shall not be required to obtain authorization from Client to act on Client Information.**

**5. Reliance on Client Information.** Paychex will not be responsible for errors that result from Paychex' reliance on Client Information.

**6. Review Reports.** Client will review all reports and documents provided or made available by Paychex and inform Paychex of any inaccuracies within three (3) business days of receipt or availability.

**7. Software Licenses.** Client has received, or may receive, certain computer software relating to Services selected by Client, including, but not limited to, the Paychex HR Online Software and Paychex Time and Labor Online Software (collectively "Software"). Client agrees that in the event that it does not accept all of the terms and conditions of any and all Paychex Software, and/or third-party Software, and any and all applicable license agreements provided to Client now or in the future, that Paychex will not be obligated to perform Services dependent upon the Software.

**8. Remit Reimbursement Amount.** Client agrees to remit funds to Paychex representing the amount due to pay Client's employees, remit taxes, or pay garnishments ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

**9. Payment of Fees.** Client will pay all fees, including but not limited to fees for all Paychex Services each pay period and the setup fees (collectively "Fees") through an EFT or such other method as required by Paychex when due. Minimum monthly Fees are due in the event Client fails to process a payroll or whose payroll fails to meet the minimum monthly charge during the month. Fees include minimum monthly, insufficient funds, and premium processing fees. Paychex' Fees are subject to change upon thirty (30) days written notification to Client. Paychex may, in its sole discretion, require a security deposit from Client, and Client waives any right to interest that may accrue on any amounts, including but not limited to, Reimbursement amounts, Fees, and security deposits received by Paychex.

**10. Electronic Funds Transfer.** If Paychex requires payment of Fees or Reimbursement Amounts (collectively "Amounts Due") through an EFT, Client (i) will execute all documentation needed by Paychex to originate EFT transactions and to verify availability of funds in Client's bank account; (ii) agrees that the funds representing the Amounts Due will be on deposit in Client's bank account in collectible form and in sufficient amount on the day Paychex' EFT is to be presented ("Funding Deadline"); and (iii) authorizes Paychex to collect all Amounts Due from Client's bank account on the Funding Deadline. All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA"). Client agrees (i) to follow NACHA as they are amended from time to time and assumes the responsibilities of an initiator of EFTs; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT. Client further agrees that it will notify Paychex, pursuant to applicable NACHA and federal regulations, if funding for Client's payroll is received from a foreign financial agency and of any employees with non-US addresses.

**11. Payment by Wire Transfer or Other Method.** If Paychex requires payment of Amounts Due by a wire transfer or other method, Client agrees to provide Paychex with all information necessary to confirm receipt of the payment prior to the Funding Deadline.

**12. Insufficient or Nonconfirmed Funds.** If sufficient funds are not available on the Funding Deadline, Paychex may take such action to collect Amounts Due, including, but not limited to, reissuance of the EFT and assessing insufficient funds Fees. **Client acknowledges that Client is responsible for any delay in remittance of wages, garnishments, or taxes, if Paychex is unable to confirm receipt of funds prior to the Funding Deadline.**

**13. Client's Default.** In the event of a Client default, Paychex may, at its sole option, terminate the Agreement, or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances or overpayments made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due, including, but not limited to, attorneys' fees (including in-house counsel), and court and arbitration costs.

14. **Refund/Adjustment/Overpayment.** Client agrees that Paychex may apply any balances it is holding for Client to Amounts Due owed to Paychex or its affiliates. In the event Paychex remits an overpayment of payroll taxes, Paychex may, at its sole discretion, advance funds to Client. In the event Paychex advances overpayment funds to Client, Client agrees that it will reimburse Paychex for the overpayment within the sooner of five (5) days of (i) receiving the overpayment amount from the taxing authority; or (ii) being notified that the overpayment amount would be applied to an outstanding tax liability of Client; or (iii) the Agreement being terminated by either party.

15. **Termination.** Except as otherwise provided, either party may terminate the Agreement upon thirty (30) days prior written notice. Paychex may immediately terminate the Agreement, or a portion thereof, if: (i) Client becomes subject to receivership, bankruptcy, or is insolvent; (ii) Paychex, in its sole discretion, determines that a material adverse change has occurred in the financial condition of Client; (iii) Client fails to have sufficient funds on the Funding Deadline; or (iv) Paychex determines, in its sole discretion, that any federal, state, or local legislation, regulatory action, or judicial decision adversely affects its interests under the Agreement. Termination of the Agreement will not relieve Client of any obligations set forth herein, including, but not limited to, its payment obligations.

16. **Limit of Liability.** Paychex' sole liability and Client's sole remedy for Paychex' breach of the Agreement will be: (i) for Paychex to remit to the appropriate payee the funds received from Client; and/or (ii) for Paychex to reimburse Client or its employees for any interest or penalties assessed by taxing authorities as a direct result of Paychex' breach of the Agreement. Paychex can only be held liable for breach of the Agreement and will not be held liable for: (i) any negligent act or omission by Paychex; (ii) the negligence of any other person or entity, including, but not limited to, Client and its employees or agents, or any person or entity that provides services in connection with or as a result of Paychex' performance of its obligations under the Agreement; (iii) any loss, claim, or expense arising from any information provided or modified by Client, including, but not limited to, any Client forms, handbooks, manuals, and job descriptions; or (iv) Client's breach of NACHA. **Paychex will, under no circumstances, be liable for any special, indirect, incidental, or consequential or punitive damages, including lost profits incurred by Client pursuant to this Agreement or by the transactions contemplated by it, however caused, on any theory of liability (including contract, tort, or warranty), or as a result of Paychex' exercise of its rights under the Agreement, even if Paychex has been advised of the possibility of such damages.**

17. **Indemnification.** Client will indemnify, defend, and hold Paychex and its respective officers, directors, and employees harmless from any and all claims, costs, attorneys' fees (including in-house counsel fees), and expenses resulting from or arising in connection with: (i) a Client default; (ii) the use, misuse, reproduction, modification, or unauthorized distribution of Software; (iii) Client's breach of NACHA; or (iv) Client's breach of any warranty set forth in the Agreement.

18. **Copyright.** Paychex owns all rights, title, and interest, including, but not limited to, copyright, patent, trade secret, and all other intellectual property rights, in the Software and any changes, modifications, or corrections to the Software. If Client is ever held or deemed to be the owner of any copyright rights in the Software or any changes, modifications, or corrections to the Software, Client hereby irrevocably assigns to Paychex all such rights, title, and interest. Client agrees to execute all documents necessary to implement and confirm the letter and intent of this section. Client warrants to Paychex that it (i) has title or is authorized to use any symbol, logo, or mark uploaded by Client or Client's agents or printed on Client's handbooks and checks

(collectively "Client Material"); and (ii) has full right and authority to use Client Material, and such use does not violate any other party's rights.

19. **Confidentiality of Software.** Client acknowledges that the Software contains valuable trade secrets and confidential information owned by Paychex or third parties (collectively "Confidential Information"). Client agrees that Client, its employees, and its agents will not, directly or indirectly: (i) sell, lease, assign, sublicense, or otherwise transfer; (ii) duplicate, reproduce, or copy; (iii) disclose, divulge, or otherwise make available to any third party; (iv) use, except as authorized by this Agreement; or (v) decompile, disassemble, or otherwise analyze for reverse engineering purposes the Software or Confidential Information. Client will take appropriate action with Client's employees and agents to satisfy its obligations under this Agreement with respect to the use, protection, and security of Confidential Information. Client will notify Paychex immediately of any unauthorized use or disclosure of Confidential Information and will cooperate in remedying such unauthorized use or disclosure.

20. **Client Confidential Information.** "Client Confidential Information" will mean the name, social security number, date of birth, address, bank, and/or wage information of Client and Client's employees provided to Paychex by Client. Paychex will use reasonable care to prevent the disclosure of such Client Confidential Information to any unauthorized person or entity. Paychex may disclose Client Confidential Information to its employees, affiliates, subsidiaries, agents, and contractors to: (i) perform or offer Services; (ii) offer additional products or services; (iii) perform analysis to determine Client's qualification to receive future services; and (iv) collect Amounts Due and may disclose Client's payment experiences with Paychex to credit reporting agencies and supply vendor references of Client's behalf. Paychex may also disclose Client Confidential Information (i) to its attorneys, accountants, and auditors; and (ii) pursuant to federal, state, or local law, regulation, court order, legal process, or governmental investigation. The obligations set forth in this section will not apply to any Client Confidential Information that: (i) Client has agreed is free of any nondisclosure obligations; (ii) at the time of disclosure was free of any nondisclosure obligations; (iii) is independently developed by Paychex or that Paychex lawfully received, free of any nondisclosure obligations, from a third party having the right to furnish such Client Confidential Information; or (iv) is or becomes available to the public without any breach of this Agreement or unauthorized disclosure.

21. **Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client shall be governed exclusively by the laws of the State of New York without regard to, or application of, its conflict of laws, rules, and principles, except for the arbitration agreement contained herein which shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). **Except as provided herein, any dispute arising out of, or in connection with the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association.** Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement. A separate neutral arbitrator must be selected and appointed for each dispute. Any dispute arising under the Agreement will be brought within two (2) years of when the claim accrued. The arbitrator will not be authorized to award exemplary or punitive damages, or any damages excluded in the Limit of Liability provision. The parties will not be permitted to bring, or participate in, and the arbitrator will not have any authority or jurisdiction to hear or decide, any claims brought as any type of purported class action, coordinated action, aggregated action, or similar action or proceeding. Each party must only bring claims against each

other in their individual capacity. The parties agree that the prevailing party in arbitration, and any subsequent judicial proceeding to enforce an arbitration award, will be awarded costs and attorneys' fees (including in-house counsel fees) and that an arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex. Client waives any jurisdictional defenses and submits to the exclusive jurisdiction of the New York courts.

22. **Assignability.** Neither party may assign the Agreement to any third parties, other than successors, without the prior written consent of the other party. Any assignment made without such consent will be null and void.

23. **Fax Signature.** The parties agree that Client's signature on this Agreement may be transmitted to Paychex by facsimile, and the parties further agree that such fax copy(ies) will have the same force and effect as if the original signature had been provided and received.

24. **Miscellaneous.** The Agreement, along with any exhibits, addendums, schedules, and amendments, contains the entire understanding of the parties and supersedes all previous understandings and agreements between the parties for the Services provided, whether oral or written. Neither party will be responsible for any delay or failure to perform obligations specified in the Agreement due to causes beyond the party's reasonable control. Client acknowledges that there have been no representations or warranties made by Paychex or Client that are not set forth in the Agreement. Paychex may modify any term of the Agreement upon thirty (30) days written notice to Client of such change and the effective date thereof. Client will be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to Paychex prior to the effective date of the change and pursuant to the Termination provisions. If any provision of the Agreement or any portion thereof is held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of the Agreement will not in any way be affected or impaired. Sections 3-24 will survive the termination of the Agreement.

Rev. 5/10

Addendum

MMS Branch/Client Number  472 / N259

Company Name  Doggett Heavy Machinery Services  LLC
City  Pharr  State  Texas  Zip  78577
Federal ID Number  REDACTED  & 8.0

The Parties hereby agree to amend and change the Paychex Major Market Services
Agreement between Client and Paychex dated  10 / 11 / 10 ( Agreement ), as
follows

Section 16 of the Agreement is hereby amended to read in its entirety, as
follows

16. **Limit of Liability.** A  **Paychex Responsibility**  Paychex shall correct any Client
report, data or tax agency filings, as the case may be, produced incorrectly as a
result of a Paychex error, at no charge to Client. Additionally, Paychex shall
reimburse Client for (i) actual damages incurred by Client as a direct result of the
criminal or fraudulent acts or willful misconduct of Paychex or any of its
employees, (ii) any penalty imposed against Client as a result of an error or
omission made by Paychex in performing the Tax Filing Services or the tax
interest assessed against Client as a result of Paychex holding Client tax funds
past the applicable due date due as a result of an error or omission made by
Paychex in performing the Tax Filing Services  Paychex shall have no liability to
Client for any third-party software that may be accessed by Paychex internet
services  In addition, Paychex shall defend, indemnify and hold Client harmless
from and against any third party claim that any software or other materials
provided by Paychex and used by Client in accordance with any applicable
license or other terms and conditions infringes the intellectual property rights of
any third party, provided that Client promptly notifies Paychex in the event that
Client becomes aware of any such claim or threatened claim

B  **Limit on Monetary Damages**  Notwithstanding anything to the contrary contained
in this Agreement (other than and subject to Section 16 A  above)  Paychex
aggregate liability under this Agreement during any calendar year for damages
(monetary or otherwise) under any circumstances for claims of any type or
character made by Client or any third party arising from or related to Paychex
Products or Services  will be limited to the lesser of (i) the amount of actual
damages incurred by Client or (ii) the average monthly charges for three (3)
months for the affected Paychex Products of Services during such calendar year
Paychex will issue Client a credit(s) equal to the applicable amount and any such
credit(s) will be applied against subsequent fees owed by Client

C  **No Consequential Damages**  NEITHER PAYCHEX NOR CLIENT WILL BE
RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL,
PUNITIVE OR OTHER SIMILAR DAMAGES (INCLUDING WITHOUT
LIMITATION, ANY LOST PROFITS OR DAMAGES FOR BUSINESS

INTERRUPTION OR LOSS OF INFORMATION) THAT THE OTHER PARTY
MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT
OR THE SERVICES OR PAYCHEX PRODUCTS, HOWEVER CAUSED AND
UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS
BEEN ADVISED OF THE POSSIBLITY OF SUCH DAMAGES.

THIS ADDENDUM IS NOT INTENDED TO MODIFY OR REPLACE ANY OTHER PROVISION OF THE
MMS AGREEMENT. EXCEPT FOR CHANGES TO THE SECTIONS SET FORTH ABOVE.

Client Authorized Officer's Name _Wm Leslie Taggart_   Title _President_

Client Authorized Officer's Signature _____   Date _1-19-11_

Paychex Authorized Officer's Name _Michael McCarthy_   Title _VP MMS Sales_

Paychex Authorized Officer's Signature _____   Date _____

# EXHIBIT A-4

**Paychex® Human Resource Services Agreement**

Company Name
Doggett *Heavy Machinery Services — Houston*

Office-Client Number **0472** -

Federal ID Number **REDACTED** *220*

## Flexible Spending Account (FSA)

a. **Plan Documents.** Paychex will act as Plan Service Provider for Client's FSA Plan. Paychex will provide Client with the following Plan installation documentation: (i) Basic Plan Document; (ii) Adoption Agreement; and (iii) Summary Plan Description. Client acknowledges that Client is responsible for (i) reviewing and signing the Adoption Agreement setting forth the terms and conditions of the Plan; and (ii) distributing the Summary Plan Description to Plan participants.

b. **Compliance Testing.** Paychex will perform the calculations for the Key Employee Concentration Test, Average Benefits Test, and Owner's Test (if applicable). If Client has a Health Savings Account (HSA), the pretax salary reductions for Client's HSA will not be incorporated into the compliance testing results. Client will be solely responsible for any aggregate testing. Client acknowledges that if the Plan fails the testing as outlined above, the Client is responsible for correcting the failure and bringing the Plan into compliance with the applicable requirements as defined in section 125 of the Internal Revenue Code.

c. **Claim Reimbursement.** Paychex will review participant General Purpose FSA claims for reimbursement pursuant to the Plan. In the event that Client has an HSA, the FSA shall be considered a Limited Purpose FSA and participants are restricted to submitting claims to the Limited Purpose FSA as authorized under the then current Internal Revenue Code. Paychex shall not review claims submitted by participants to the Limited Purpose FSA to determine whether the submitted claim is an authorized reimbursement under a Limited Purpose FSA or whether the claim should have been submitted through the HSA. The participant is solely responsible for maintaining their eligibility under the HSA.

d. **Direct Deposit for FSA Reimbursement.** Paychex will provide direct deposit capability for FSA reimbursements for Client's employees. If Client's employees use direct deposit for FSA reimbursements, Paychex will process EFTs, or such other payment methods as Paychex may require, for such amounts as are necessary to reimburse Client's employees for FSA claims. All debited amounts are held in an account established by Paychex for approximately three (3) business days until funds are deposited to employees' accounts as specified by each employee. Any credit or interest earned on said funds will be applied to administrative costs of Paychex.

e. **FSA Debit Card.** Paychex will provide Client access to a stored value processing system provided by a third party vendor. Client's employees who elect to utilize the Paychex FSA Debit Card ("FSA Debit Card Users") will have access to their flexible spending accounts in accordance with a cardholder agreement executed by the FSA Debit Card User with the third party vendor. Client authorizes Paychex to provide to its agents and subcontractors information pertaining to Client and Client's employees who elect to utilize the FSA Debit Card as is necessary to provide the FSA Debit Card Service. The FSA Debit Card may only be used at specified locations and for certain services or items. FSA Debit Card Users will be required to provide Paychex with back up documentation. In the event that Client's employees fail to provide substantiation of their claim, or if an expense is ineligible, Client will be solely responsible for recouping from its employees any money used for these expenses. Paychex will process EFT transactions from Client's designated bank account for such amounts as are necessary to pay Client's employees for authorized items purchased using their FSA Debit Card. Client will provide Paychex with information pertaining to co-pays, if any, that its employees pay. Upon receipt of co-pay information, Paychex may adjudicate claims that match the co-pays without requiring additional paperwork in most instances, based solely on merchant terminal coding. Client will update co-pay information in the event it changes. Client will provide Paychex with the company's plan information.

f. **Additional Client Obligations.** Client will identify employees who are classified as Owners, Highly Compensated Employees (HCEs), and Key Employees at the time of setup, and promptly provide Paychex with any changes pertaining to the identity of Owners, HCEs, and Key Employees.

g. **Cancellation of Plan.** If the Plan is cancelled by Client in writing after Paychex has completed its initial processing of the submitted Plan, but prior to Client's first payroll that includes Plan contributions, the greater of 50% or $500 of the setup fee will be retained by Paychex. All setup fees are non-refundable after Client's first payroll that includes Plan contributions.

h. **Termination of Agreement and Claim Reimbursement.** In the event that the Agreement is terminated, Paychex may, at its sole option, provide the Client the option of continuing the claims reimbursement service for the close out period specified by the Client (30, 60, or 90 days) for an additional fee ("Post Termination FSA Claims Service"). In the event Client elects to purchase the Post Termination FSA Claims Service for less than ninety (90) days, Client agrees that it is solely responsible for performing any FSA claims reimbursements required by the Client's FSA Plan or by law following the completion of the Post Termination FSA Claims Service.

## Terms and Conditions

1. **Term of Agreement.** This Paychex® Human Resource Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated by Client or by Paychex in accordance with the provisions of this Agreement.

2. **Service Effective Date.** Paychex will not commence any of the services until Paychex receives all documents necessary to begin the services and notifies Client of the date Paychex will commence each of the services ("Service Effective Date"). Client acknowledges that each service may have separate Service Effective Dates. **Until the Service Effective Date, Client will provide for itself the Services requested of Paychex. Paychex assumes no responsibility for Services prior to the Service Effective Date.**

3. **Services to be Performed.** Paychex will provide the services initialed in this Agreement ("Services"). **Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services, nor will Paychex be deemed a fiduciary of Client, or the employer or joint employer of the Client's employees.** Paychex will not be responsible for Client's compliance with, nor will it provide legal or other financial advice to Client, with respect to federal, state, or local statutes, regulations, or ordinances including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

4. **Client Contacts.** Client will designate payroll contacts that will provide Paychex with information and directives necessary for Paychex to perform the Services (collectively "Client Information"). Client is responsible for the accuracy of Client Information provided by payroll

contacts and/or Client.

5. **Client Information.** Client will execute and/or provide all documentation that Paychex requires to perform its responsibilities under the Agreement including, where necessary, taking all corporate action. Client acknowledges that Paychex may be required to obtain documents necessary to verify the identity of Client pursuant to applicable federal and/or state statutes or regulations. Client will provide Paychex with all necessary Client Information pertaining to Client's employees at least two banking days prior to a payroll check date. **Failure to provide Client Information timely may result in delayed remittance of FSA reimbursements and additional processing fees. Paychex will not be required to obtain authorization from Client to act on Client Information.**

6. **Reliance on Client Information.** Paychex will not be responsible for errors that result from Paychex' reliance on Client Information.

7. **Review Reports.** Client will review all reports and documents provided by Paychex and inform Paychex of any inaccuracies within three (3) business days of receipt.

8. **Payment of Fees.** Client will pay the fees for all Paychex services and the setup fees through an Electronic Funds Transfer (EFT), or such other payment method as required by Paychex when due (collectively "Fees"). Paychex' Fees are subject to change at any time upon thirty (30) days written notification to Client. Paychex may, in its sole discretion, require a security deposit from Client. Client hereby waives any right to interest that may accrue on any amounts, including, but not limited to, Fees and security deposit received by Paychex.

9. **Remit Reimbursement Amounts.** Client agrees to remit funds to Paychex representing the amount due to reimburse Client's employees for FSA claims ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

10. **Electronic Funds Transfer.** If Paychex requires payment of Fees or Reimbursement Amounts (collectively "Amounts Due") through an EFT, Client (i) will execute all documentation needed by Paychex to originate EFT transactions; (ii) agrees that the funds representing the Amounts Due will be on deposit in Client's bank account in collectible form and in sufficient amount on the day Paychex' EFT is to be presented ("Funding Deadline"); and (iii) authorizes Paychex to collect all Amounts Due from Client's bank account on the Funding Deadline. All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA"). Client agrees (i) to follow NACHA as they are amended from time to time; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT.

11. **Payment by Wire Transfer or Other Method.** If Paychex requires payment of Amounts Due by a wire transfer or other method, Client agrees to provide Paychex with all information necessary to confirm receipt of the payment, including, but not limited to, financial institution information and confirmation numbers prior to the Funding Deadline.

12. **Insufficient or Nonconfirmed Funds.** If sufficient funds are not available on the Funding Deadline, Paychex may take such action to collect Amounts Due, including, but not limited to, reissuance of the EFT. **If Paychex is unable to confirm receipt of funds prior to the Funding Deadline, remittance of FSA reimbursements may be delayed.**

13. **Client's Default.** In the event of a Client Default, Paychex may, at its sole option, terminate the Agreement or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due including, but not limited to, attorneys' fees (including in-house counsel) and court and arbitration costs.

14. **Refund/Adjustments.** Client agrees that Paychex may apply any balances it is holding for Client to Amounts Due owed to Paychex or its affiliates.

15. **Termination.** Except as otherwise provided, either party may terminate the Agreement upon thirty (30) days prior written notice. Paychex may immediately terminate the Agreement, or a portion thereof if: (i) Client becomes subject to receivership, bankruptcy, or is insolvent; (ii) Paychex, in its sole discretion, determines that a material adverse change has occurred in the financial condition of Client; (iii) Client fails to have sufficient funds on the Funding Deadline; or (iv) Paychex determines, in its sole discretion, that any federal, state, or local legislation, regulatory action, or judicial decision adversely affects its interests under the Agreement. Termination of the Agreement will not relieve Client of any obligations set forth herein, including, but not limited to, its payment obligations.

16. **Limit of Liability.** Paychex' sole liability and Client's sole remedy for Paychex' breach of the Agreement will be: (i) for Paychex to remit to the appropriate payee the funds received from Client; and/or (ii) for Paychex to reimburse Client or its employees for any interest or penalties assessed as a direct result of Paychex' breach of the Agreement. Paychex will not be held liable for (i) the negligence of any other person or entity, including, but not limited to, Client and its employees or agents, or any person or entity that provides services in connection with or as a result of Paychex' performance of its obligations under the Agreement; (ii) any loss, claim, or expense arising from any information provided or modified by Client, including, but not limited to, Client forms, handbooks, manuals, and job descriptions; or (iii) Client's breach of NACHA. **Paychex will, under no circumstances, be liable for any special, indirect, incidental, or consequential damages that Client may incur as a result of Paychex' breach of the Agreement, or as a result of Paychex' exercise of its rights under the Agreement, even if Paychex has been advised of the possibility of such damages.**

17. **Indemnification.** Client will indemnify, defend, and hold Paychex and its respective officers, directors, and employees harmless from any and all claims, costs, attorneys' fees (including in-house counsel fees), and expenses resulting from or arising in connection with (i) a Client Default; (ii) Client's breach of NACHA; or (iii) Client's breach of any warranty set forth in the Agreement.

18. **Client Confidential Information.** "Client Confidential Information" will mean the name, social security number, address, bank, and wage information of Client and Client's employees provided to Paychex by Client. Paychex will use reasonable care to prevent the disclosure of such Client Confidential Information to any unauthorized person or entity. Paychex may disclose Client Confidential Information to its employees, affiliates, subsidiaries, agents, and contractors to: (i) perform Services; (ii) offer additional products or services; (iii) perform analysis to determine Client's qualification to receive future services; and (iv) collect Fees. Paychex may disclose Client's payment experiences with Paychex to credit reporting agencies and supply vendor references on behalf of the Client. Paychex may also disclose Client Confidential Information (i) to its attorneys, accountants, and auditors; and (ii) pursuant to federal, state, or local law, regulation, court order, legal process, or governmental investigation. The obligations set forth in this section will not apply to any Client Confidential Information that: (i) Client has agreed is free of any nondisclosure obligations; (ii) at the time of disclosure was free of any nondisclosure obligations; (iii) is independently developed by Paychex or that Paychex lawfully received, free of any nondisclosure obligations, from a third party having the right to furnish such Client Confidential Information; or (iv) is or becomes available to the public without any breach of this Agreement or unauthorized disclosure.

19. **Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client will be governed exclusively by the laws of the State of New York without regard to or application of its conflict of laws rules and principles, except for the arbitration agreement contained herein that will be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). **Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association.** Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement. A separate neutral arbitrator must be selected and appointed for each dispute. Any dispute arising under the Agreement shall be brought within two (2) years of when the claim accrued. The arbitrator will not be authorized to award exemplary or punitive damages. The Parties will not be permitted to bring or participate in, and the arbitrator will not have any authority or jurisdiction to hear or decide, any claims brought as any type of purported class action, representative action, collective action, consolidated action, coordinated action, aggregated action, or similar action or proceeding. Each party must only bring claims against each other in their individual capacity. Paychex may, in its sole discretion, commence an action in any court of competent jurisdiction within the County of Monroe, State of New York, for any monies due and owing from Client to Paychex. Client waives any jurisdictional defenses and submits to the exclusive jurisdiction of the New York courts. The parties agree that the prevailing party in arbitration, and any subsequent judicial proceeding to enforce an arbitration award, will be awarded costs and attorneys' fees (including in-house counsel fees) and that an arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement.

20. **Assignability.** The Client may not assign the Agreement to any third parties, other than successors, without the prior written consent of Paychex. Any assignment made without such consent will be null and void.

21. **Fax Signature.** The parties agree that Client's signature on this Agreement may be transmitted to Paychex by facsimile, and that such faxed copy(ies) will have the same force and effect as if the original signature had been provided and received.

22. **Miscellaneous.** The Agreement contains the entire understanding of the parties. Neither party will be responsible for any delay or failure to perform obligations specified in the Agreement due to causes beyond the party's reasonable control. Client acknowledges that there have been no representations or warranties made by Paychex or Client that are not set forth in the Agreement. Paychex may modify any term of the Agreement upon thirty (30) days written notice to Client of such change and the effective date thereof. Client will be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to Paychex prior to the effective date of the change. If any provision of the Agreement or any portion thereof will be held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remainder of the Agreement will not in any way be affected or impaired. Sections 1-22 will survive the termination of the Agreement.

Client understands that this Agreement (Rev. 01/09) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions of this Agreement.

Authorized Officer's Name

★ Jim Leslie Possett      ★ Title President

Authorized Officer's Signature

★ _(signature)_      ★ Date 10/17/10

Rev 01/09

# EXHIBIT A-5

Paychex Use Only
Client BIS ID

**PAYCHEX**

## 401(k) and Section 125
## Plan Contact Change Form

Company Name   W L Doggett LLC

**REDACTED**                                    PRINT

Federal ID                 645                    Office/Client Number

Paychex is requested to **add** the following plan contacts for the plan.   *Zip code is required.

**Add Contact**                                  **REDACTED**

Print Name   Joan Marlussa       Email Address

Print Name _____       Email Address _____   Zip Code _____

Print Name _____       Email Address _____   Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**                               **REDACTED**

Print Name   Tiffany Bordelon    Email Address

Print Name   Chris Jaguars       Email Address

Print Name _____       Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the
plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon
direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and
those added above. I understand that authorized plan contacts have the authority to discuss any
Human Resource product that Paychex, Inc. provides services for, including Retirement Services
and Section 125.

Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the
Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.

Brian P McLemore
Print Name

_Br P R_____      CFO_____      10/30/13
Authorized Plan Contact          Title               Date

**Please submit form by mail:**      **or fax:**

Paychex, Inc.                    Fax: 585-389-7878
Attention: NSI                   Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

If you have any questions, contact the Paychex at 1-800-472-0072.

HRS028  9/13

Paychex Use Only

Client BIS ID _____

# PAYCHEX

## 401(k) and Section 125
## Plan Contact Change Form

Company Name  Red Dog

**REDACTED**                    PRINT

Federal ID ____    645    Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.   *Zip code is required.*

**Add Contact**                                              **REDACTED**

Print Name  Joan Mulcasn    Email Address ____

Print Name _____    Email Address _____    Zip Code _____

Print Name _____    Email Address _____    Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**                                  **REDACTED**

Print Name  Tiffany Bordelon    Email Address _____

Print Name  Chris Jagurs    Email Address _____

Print Name _____    Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.

Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.

Brian P McLemore
Print Name

Bri P M    CFO    10/30/13
Authorized Plan Contact    Title    Date

**Please submit form by mail:**        **or fax:**

Paychex, Inc.                Fax: 585-389-7878
Attention: NSI               Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY  14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HR5028  9/13

Paychex Use Only

Client BIS ID _____

# PAYCHEX

## 401(k) and Section 125
## Plan Contact Change Form

Company Name Doggett Heavy Machinery Services LLC

**REDACTED**
PRINT

Federal ID __ 110 _____ Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.   *Zip code is required.

**Add Contact**

Print Name Joan Matussa _____ Email Address

**REDACTED**

Print Name _____ Email Address _____ Zip Code _____

Print Name _____ Email Address _____ Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name Tiffany Bordelon _____ Email Address

**REDACTED**

Print Name Chris Jaques _____ Email Address

Print Name _____ Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the
plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon
direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and
those added above. I understand that authorized plan contacts have the authority to discuss any
Human Resource product that Paychex, Inc. provides services for, including Retirement Services
and Section 125.

Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the
Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.

Brian P McLemore
Print Name

_____ CFO _____ 10/31/13
Authorized Plan Contact          Title                          Date

Please submit form by mail:      or fax:

Paychex, Inc.                    Fax: 585-389-7878
Attention: NSI                   Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

If you have any questions, contact the Paychex at 1-800-472-0072.

HRS028  9/13