# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **W.L. DOGGETT LLC AND DOGGETT HEAVY MACHINERY SERVICES, LLC,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. 14-cv-506** |
| **PAYCHEX, INC. AND JOHN DOES 1-10,** | § § § § | |
| **Defendants.** | § | |

## DEFENDANT PAYCHEX, INC.'S EMERGENCY MOTION TO QUASH, FOR PROTECTIVE ORDER, AND FOR STAY OF DISCOVERY AND MEMORANDUM IN SUPPORT[1]

**TO THE HONORABLE JUDGE OF SAID COURT:**

Paychex, Inc. ("Paychex") files this Emergency Motion to Quash, for Protective Order, and for Stay of Discovery, requesting that the Court quash Plaintiffs W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC's (together, "Plaintiffs") notice of Paychex's corporate representative deposition, that the Court protect Paychex from Plaintiffs' written discovery, and that the Court stay all further discovery pending a ruling on Paychex's motions seeking a

---

[1] Paychex files the instant Motion subject to, and without waiving, Paychex's Motion to Compel Arbitration and Dismiss or Stay, and in Paychex's Motion to Transfer Venue.

dismissal of this action, an order compelling this action to arbitration, and/or transfer action to the Western District of New York ("WDNY").

## I.  INTRODUCTION AND SUMMARY

At the outset of this litigation, Plaintiffs agreed that they did not need any discovery while the Court ruled on Paychex's pending motion to compel arbitration, motion to dismiss, or motion to transfer venue, and agreed to defer all discovery (including a Rule 26(f) conference and initial disclosures) until after the Court ruled on the pending motions.  The parties' agreement was reflected in the joint case management plan filed with Court and also reiterated on the record at the June 26, 2014, scheduling conference.  At that scheduling conference, Magistrate Stephen Smith noted that the parties' agreement made "all the sense in the world" and entered a Scheduling Order with the understanding that the deadlines were not "final" and that if a ruling on the motions did not occur by August 2014, then a new scheduling order (using the existing framework) would likely be necessary.

As there was no ruling on the pending motions as of September 30, 2014, the eve of the first deadline, the parties jointly requested an extension of the deadlines in the Scheduling Order.  The Court denied the motion on October 1, 2014.  Days later, on October 6, 2014, Plaintiffs served Paychex with interrogatories, requests for admission, and requests for production.  Plaintiffs also served Paychex with a Rule 30(b)(6) deposition notice for Paychex's corporate

representative on an unspecified date in October 2014, in Houston, Texas. Plaintiffs later amended the notice unilaterally setting the deposition for November 19, 2014.

Good cause exists for the Court to enter an order quashing the deposition notice, protecting Paychex from Plaintiffs' discovery requests, and staying all discovery pending a ruling on the pending motions (orders collectively referred to herein as a "Protective Order"). The discovery is premature and prohibited by Rule 26(d) because no Rule 26(f) conference has taken place. The parties agreed to postpone any such conference until after a ruling on all pending motions, and no discovery may occur until the Rule 26(f) conference requirement is met. A ruling on Paychex's pending motion to compel arbitration and/or motion to dismiss will also render Plaintiffs' discovery moot. Thus, it is proper to stay discovery pending a ruling on the motions. Plaintiffs' discovery requests and the topics in the Rule 30(b)(6) deposition notice are also overly broad, impose undue burden and expense upon Paychex, and wholly undermine the purpose of Paychex's arbitration agreements. The location for Paychex's corporate representative(s) deposition, if any, should take place in Rochester, New York, which is the location of its corporate offices, not in Houston, Texas. Plaintiffs' discovery would not be permitted in arbitration, and Paychex should not be deprived of the benefit of its arbitration agreement while seeking to compel arbitration and dismiss this case.

## II.  PERTINENT PROCEDURAL FACTS

1.     Plaintiffs filed their Original Complaint [Doc. 1] on February 28, 2014.  The only defendants were "John Does 1-10," unknown third-parties. Plaintiffs' sole claim was for unauthorized access of a protected computer system with intent to defraud, based on the "John Does" allegedly obtaining and using the personal identifying information of Plaintiffs' employees.

2.     Four days later, the Court entered an "Order for Conference and Disclosure of Interested Parties," [Doc. 2], ordering counsel for Plaintiffs to appear for an initial pretrial and scheduling conference on May 28, 2014, before United States Magistrate Judge Stephen Smith in Houston, Texas.

3.     On May 2, 2014, over two months after the Court ordered a pretrial conference, Plaintiffs filed their First Amended Complaint [Doc. 5] ("Amended Complaint") naming Paychex as a defendant, asserting that the "John Does 1-10" are supposedly Paychex employees, and asserting eleven causes of action.

4.     On May 27, 2018, Paychex filed an Unopposed Motion for Continuance [Doc. 8], requesting a continuance of the scheduling conference "subject to its right to file pre-answer motions."  That same day, the Court reset the scheduling conference for June 26, 2014 [Doc. 9].

5.     On June 20, 2014, Paychex filed Defendant's Motion to Transfer Venue to Western District of New York and Memorandum in Support [Doc. 12]

("Motion to Transfer Venue"). That same day, Paychex also filed Defendant Paychex, Inc.'s Motion to Compel Arbitration and Dismiss or Stay, and Brief in Support, Filed Subject to Motion to Transfer Venue ("Motion to Compel Arbitration/to Dismiss") [Doc. 13].[2]

6. Five days later, on June 25, 2014, Paychex and Plaintiffs (together, the "Parties") filed a Joint Discovery/Case Management Plan Under Rule 26(f) Federal Rules of Civil Procedure ("Joint Plan") [Doc. 15]. In the Joint Plan, "Doggett agree[d] that Paychex [was] not waiving any rights with respect to its pending motions by filing this Joint [Plan]." The Joint Plan reflects an agreement between the Parties to delay discovery pending a ruling on Paychex's Motions.

7. Specifically, the Parties agreed: (a) to postpone making Rule 26(a) disclosures until 45 days after the Court resolves both of Paychex's pending Motions, and (b) to postpone the Rule 26(f) conference until 30 days after a ruling on the pending Motions, should the Court's ruling on those Motions make disclosures. Plaintiffs also stated that they anticipated serving interrogatories to Paychex 30 days after a ruling on Paychex's pending Motions, and that they would take depositions of persons named on Paychex's initial disclosures 30-60 days after receiving responses to written discovery and document production.

---

[2] The Motion to Transfer Venue and Motion to Compel Arbitration/to Dismiss are jointly referred to herein as the "Motions," which are incorporated herein by reference, including all attachments.

8. The scheduling conference took place on June 26, 2014, before Magistrate Smith. A true and correct copy of the Transcript from the scheduling conference is attached hereto as <u>Exhibit A</u>. Christopher Trowbridge appeared on behalf of Paychex and Christopher Dodson appeared on behalf of Plaintiffs. At that hearing, the Parties and Magistrate Smith contemplated a ruling on the Motions in August 2014 and established a tentative scheduling based on that assumption, with the Parties and the Court understanding that (1) no discovery would take place pending a ruling on the Motions; and (2) the deadlines would be changed if a ruling did not occur by August 2014:

> **Mr. Trowbridge:** . . . We've also agreed to not start discovery disclosures, et cetera, until those [Paychex's Motions] are resolved.
>
> . . . [*Discussion about setting trial date*]
>
> **Mr. Dodson:** And what I would say to Mr. Trowbridge is that yes, we agree that we should get these motions resolved before we start doing a whole bunch of discovery. I think that makes good sense. But I don't think that our discovery period needs to be very long . . . . we need about six months for discovery.
>
> So I would ask the Court to go ahead and enter a trial date. If the decision on the motions slips and takes longer, Judge Hittner moves pretty quickly, as you know, I would be hopefully [sic] that we would be able to get a decision on those motions in August and if we get a decision in August and then we do six months of discovery, I think a summer of 2015 trial date is realistic.
>
> . . .
>
> **The Court:** . . . Well, what I had anticipated giving as a discovery cutoff would have been next March and that's somewhat

consistent, I guess, with if we get an August – if you get an August decision on those motions.

I think probably a better way to handle it and probably the way Judge Hittner prefers, is let's go ahead and get a Scheduling Order in place and if things develop and it appears that more time is necessary, . . . then we can deal with that at that point, but at least we have a schedule and a framework and we can go forward.

But I appreciate your concerns and I'm sure Judge Hittner will take that into account as needs be.

So let me go ahead and give you a Scheduling Order, understanding that these may not be final dates, but at least we'll have something in place.

. . . [*Magistrate Smith provides dates for deadlines*]

All right. These are your deadlines, understanding that there may be good grounds to shift these later on.

**Mr. Dodson:** Thank You, Your Honor. And just for the Record's sake, while the motions are pending, we should not be doing disclosures?

**The Court:** I think that's – I think basically what you have now is an agreement on the Record that – I won't include it in the Order but I think because with the parties' agreement, I think it makes sense. And I'm pleased to see the parties cooperating like that. That does make all the sense in the world at this point.

9.     Later that same day, Magistrate Smith entered a Scheduling Order consistent with the discussion at the Scheduling Conference. [Doc. 18]. The Scheduling Order does not include a deadline for initial disclosures, but sets November 3, 2014, as the deadline for the amendment of pleadings with leave of court and sets October 1, 2014, as the deadline to add parties.

10.    Plaintiffs filed their Responses to Paychex's Motions on August 1, 2014 [Docs. 20-21], Paychex filed their Replies on August 15, 2014 [Docs. 22-23], and Plaintiffs filed Sur-Replies on August 20, 2014 [Docs. 24, 26].

11.    On September 30, 2014, on the eve of the deadline for the addition of parties, Paychex and Plaintiffs filed a Joint Motion to Extend Deadlines in the Rule 16 Scheduling Order [Doc. 27] ("Joint Motion").  In that Joint Motion, Plaintiffs and Paychex stated "[g]iven the nature of the pending motions, including a motion to dismiss or stay this case, the Parties request that the deadlines in the Rule 16 Scheduling Order be extended pending the Court's ruling on the pending motions (Dkt. Nos. 12 and 13)," and stated that the Parties will meet and confer to propose new deadlines for the Court's consideration following the Court's rulings on the pending Motions.  The Joint Motion was consistent with the discussion taking place at the Scheduling Conference with Magistrate Smith.

12.    The next day, on October 1, 2014, the Court entered an order denying the Parties' Joint Motion. October 1, 2014, came and went and neither Plaintiffs nor Paychex sought leave to add any additional parties to this case.

13.    A mere five days later, however, on October 6, 2014, Plaintiffs served Paychex with:

(a)    Plaintiffs' First Set of Requests for Production to Defendant Paychex, Inc. ("Requests for Production"), a true and correct copy of which is attached hereto as Exhibit B;

(b)　　Plaintiffs' First Set of Requests for Admission to Defendant Paychex Inc. ("Requests for Admission"), a true and correct copy of which is attached hereto as <u>Exhibit C</u>;

(c)　　Plaintiff's First Set of Interrogatories to Defendant Paychex, Inc. ("Interrogatories"), a true and correct copy of which is attached hereto as <u>Exhibit D</u>; and[3]

(d)　　Plaintiffs' Notice of Intent to Take the Oral and Videotapes Deposition of Paychex, Inc. ("First Notice"), a true and correct copy of which is attached hereto as <u>Exhibit E</u>.

The First Notice set the Rule 30(b)(b) deposition of Paychex's corporate representative(s) on a "mutually agreeable" date in October 2014.

14.　　On October 22, 2014, Plaintiffs served an Amended Notice of Intent to Take the Oral and Videotaped Deposition of Paychex, Inc. ("Notice"), a true and correct copy of which is attached hereto as <u>Exhibit F</u>, unilaterally scheduling a Rule 30(b)(6) deposition of Paychex's corporate representative(s) for November 19, 2014, in Houston, Texas.　Paychex's corporate headquarters and corporate offices are located entirely in the greater Rochester, New York area.

15.　　Paychex's deadline to respond to the Discovery Requests is currently November 5, 2014.

16.　　As of the date of this Motion, no Rule 26 conference has taken place, the Parties have not made their initial disclosures, Paychex's Motions are still pending, and Paychex has not filed an answer to Plaintiffs' Amended Complaint

---

[3] The Requests for Production, Requests for Admission, and Interrogatories are collectively referred to herein as the "Discovery Requests."

(as no ruling has occurred on the Motion to Compel Arbitration/to Dismiss to trigger Paychex's answer deadline).

## III.   ARGUMENT AND AUTHORITIES

### A.   Standard For a Motion for Protective Order and for Stay of Discovery.

Rule 26(c) of the Federal Rules provides, "A party . . . from whom discovery is sought may move for a protective order" and that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." FED. R. CIV. P. 26(c)(1).   Good cause exists for the entry of a Protective Order.  As shown below, the Court should enter a Protective Order as Plaintiffs' discovery is premature as no Rule 26(f) conference has occurred, a ruling on Paychex's Motion to Compel Arbitration/to Dismiss will moot Plaintiffs' discovery, and the discovery is overly broad and unduly burdensome and undermines the arbitration agreements.

### B.   Plaintiffs' Discovery Is Premature and Prohibited by Rule 26(d).

Rule 26(d) of the Federal Rules of Civil Procedure states, "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempt from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1).

Plaintiffs' discovery is premature as no Rule 26(f) conference has occurred. In the Joint Plan, Plaintiffs agreed "to postpone the Rule 26(f) conference until 30 days after Paychex's pending [Motions] are both resolved, should the Court's rulings on those Motions make disclosure necessary." [Doc. 15]. Plaintiffs also agreed to "postpone making Rule 26(a) disclosures until 45 days after the Court resolves both Paychex's pending [Motions], should the Court's rulings on those Motions make disclosures necessary." [Doc. 15]. This agreement was also reiterated at the Scheduling Conference. Consequently, no Rule 26(f) conference has occurred as a ruling on the Motions is still pending. This case is not exempt from the initial disclosure requirements under Rule 26(a)(1)(B). There are no rules authorizing discovery to take place in this case prior to the Rule 26(f) conference. There is no stipulation of the Parties agreeing to exchange discovery prior to the Rule 26(f) conference. And neither the Scheduling Order nor any other order of the Court imposes any deadline for providing initial disclosures. The Parties and Magistrate Smith all agreed that it made sense to delay discovery pending a ruling.

Accordingly, good cause exists for a Protective Order. Plaintiffs' Discovery Requests and Notice are premature, violate the Parties' agreements, and violate Rule 26(d) of the Federal Rules of Civil Procedure. *See Daniel v. Caesar*, 2009 WL 801617, at *1 (M.D. LA. Mar. 25, 2009) (not designated for publication) (quashing party deposition notice when no Rule 26(f) conference took place).

**C.**   **A Ruling On Paychex's Motion to Compel Arbitration/Rule 12(b)(1)**
**Motion to Dismiss Will Moot Plaintiffs' Discovery.**

Courts have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).   A stay of discovery is appropriate when a dispositive motion "might preclude the need for discovery altogether thus saving time and expense." *Von Drake v. Nat'l Broad., Co.*, 2004 WL 1144142, No. 03-04-CV-0652R, at *1 (N.D. Tex. May 20, 2004) (not designated for publication) (quoting *Landry v. Air Line Pilots Assn' Internat'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1999)).   Many courts have stayed discovery pending a resolution of dispositive motions.   *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (court should stay discovery pending determination of motion to dismiss based on governmental immunity); *Petrus*, 833 F.2d at 583 (court properly stayed discovery pending Rule 12(b)(6) motion where discovery would uncover no facts that could have affected motion); *Williamson v. U.S. Dep't of Agriculture*, 815 F.2d 368, 382 (5th Cir. 1987) (affirmed stay of discovery pending determination of motion to dismiss converted to motion for summary judgment where discovery would not  uncover facts relevant to motion).

In Paychex's motion, Paychex asks the Court to compel this case to binding arbitration in Rochester, New York and also seeks dismissal of this action under Rule 12(b)(1) based on lack of subject-matter jurisdiction (due to the Parties'

arbitration agreement). [Doc. 13]. If the Court grants the Rule 12(b)(1) Motion, then the ruling would moot Plaintiffs' discovery. *See also Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (stating "common sense" dictates that no discovery would proceed pending a Rule 12(b)(6) motion to dismiss as the purpose of the Rule is to enable defendants to challenge the legal sufficiency of the complaint without subjecting themselves to discovery). If the Court grants Paychex's Motion to Compel Arbitration, then an arbitrator will decide what discovery is necessary between the Parties in accordance with the standards governing arbitration proceedings. Thus, it is also proper to stay discovery pending a ruling on the Motion to Compel Arbitration. *See, e.g.*, *Andrus v. D.R. Horton, Inc.*, 2012 WL 1971326, No. 2:12-cv-00098-ECR-VCF, at *3 (D. Nev. June 1, 2012) (not designated for publication) ("[R]equiring the parties to proceed with the action pending a ruling on the motion to compel arbitration . . . would cause the party seeking to enforce the arbitration clause to be 'deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes.'") (quoting *Alascom, Inc. v. ITT N. Elec. CO.*, 727 F.2d 1419, 1422 (9th Cir. 1984)).[4]

---

[4] *See also Harrell's LLC v. Agrium Advanced (U.S.) Tech., Inc.*, 2011 WL 1596007, No. 8:10-CV-1499-T-33AEP, at *1-2 (M.D. Fla. Apr. 27, 2011) (not designated for publication) (staying discovery pending resolution of motion to compel arbitration); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coors*, 357 F.Supp.2d 1277, 1280 (D. Colo. 2004) (interests of judicial economy advanced by staying discovery pending motion to compel arbitration).

A stay of discovery is also appropriate pending a ruling on the Motions because even if Plaintiffs' choice of venue in the Southern District of Texas ("SDTX") was appropriate when they filed their Original Complaint, that was no longer the case when Plaintiffs filed their Amended Complaint, which essentially transformed this lawsuit into an entirely new suit. Plaintiffs' Original Complaint was based on the alleged theft of personal identifying information perpetrated by unknown third parties ("John Does 1-10") and does not reference any alleged actions or inactions by Paychex or its employees. Plaintiffs' Amended Complaint abandoned the claim against the unknown third parties, changed the identity of the "John Does" to supposedly being Paychex employees,[5] joined Paychex, and added ten claims all of which are based on, in one way or another, Plaintiffs' contention that Paychex allegedly failed to use reasonable care to prevent the disclosure of confidential information. Plaintiffs' claims fall squarely within the parameters of the parties' arbitration agreement, as explained in the Motion to Compel Arbitration. Thus, when Plaintiffs chose the SDTX as the forum for this lawsuit, Paychex's location, the sources of proof relevant to the claims pending in this case now, and the Parties' arbitration agreements were not at issue, but are central now. By maintaining this action in the SDTX against Paychex, Plaintiffs are essentially "piggybacking" its claims against Paychex onto the claim they initially filed, but

---

[5] At the Scheduling Conference, Plaintiffs stated they have no idea who allegedly perpetrated the alleged theft, admitting they do not know if Plaintiffs' own employees are responsible.

have since abandoned, against unknown, imaginary defendants.  Plaintiffs should

not be permitted to deprive Paychex of the benefit of its arbitration agreements by

filing, even if without ill motive, a suit against one defendant to establish a forum,

and then replace that suit with another involving different defendants and new

claims.

Accordingly, Paychex respectfully requests that the Court stay all discovery

pending a ruling on the Motions.

**D.     Plaintiffs' Discovery Imposes Undue Burden and Expense that Undermine the Whole Purpose of the Arbitration Agreements.**

Good cause exists for the Protective Order as Plaintiffs' Discovery Requests

and Notice impose undue burden and expense upon Paychex and undermine the

purpose of the agreements.  In an arbitration before the American Arbitration

Association ("AAA"),[6] care is taken "to avoid importing procedures from court

systems, as such procedures may not be appropriate to the conduct of arbitrations

as an alternative form of dispute resolution that is designed to be simpler, less

expensive and more expeditious."  AAA Rule P-1.  An arbitrator determines what

information is necessary for the expedient, cost-efficient resolution of a dispute,

decides how to manage the exchange of information, and defines the parameters

for any necessary document exchange.  AAA Rule R-21(b), R-22, P-2.

---

[6] "AAA Rule" refers to the AAA Commercial Arbitration Rules and Mediation Procedures; true and correct copies of excerpts from which are attached hereto as <u>Exhibit G</u>.

Plaintiffs served Paychex with 26 Requests for Admissions, 15 Interrogatories, 20 Requests for Production, and a Rule 30(b) deposition notice on 24 different topics. Even the manner in which Plaintiffs define "Paychex" to include its "agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf" is overly broad, unduly burdensome, harassing, and vague. Plaintiffs' Requests for admissions would not be permitted in arbitrations and contain numerous inaccuracies and false assumptions that, in light of the pending Motions, would impose unnecessary expense to address. Interrogatories are rarely permitted in arbitration and when they are, they are narrow in scope and number. Plaintiffs' Interrogatories also would not be permitted in arbitration as they include overly broad and unduly burdensome requests, including but not limited to:

- "Please identify and describe all personal and/or confidential information Paychex ever received or maintained related to Doggett or its current or former employees and their dependents." (Interrogatory No. 3).

- "Please identify and describe Paychex's systems and/or processes to protect its customers' confidential information, the steps taken by Paychex to secure and protect the Personal Information, and how these steps did or did not conform with Paychex's establish systems and/or processes." (Interrogatory No. 5)

- Please explain the steps taken by Paychex to investigate the unauthorized access of the Doggett Account and/or any Personal Information and any findings resulting from such investigation." (Interrogatory No. 12).

- "Please explain all information within Paychex's possession, custody, or control relating to the theft or unauthorized access of the Doggett Account

and/or any Personal Information, including when such unauthorized access occurred, the frequency of such authorized access, the manner in which such unauthorized access was obtained, what specific information was revealed and obtained through the unauthorized access, all steps taken by Paychex to stop such unauthorized access, and what additional steps Paychex could have taken to prevent such unauthorized access." (Interrogatory No. 13).[7]

Interrogatory Nos. 14 and 15 are blatant fishing expeditions asking for information unrelated to this case. Plaintiffs' Requests for Production also include overly broad, unduly burdensome, and often vague requests, including but not limited to:

- "All documents and communications between Doggett and Paychex relating to any Personal Information, including the sending or receiving of such information and the access of such information." (Request No. 1).

- "All documents and communications relating to who has or had access to the Doggett Account and/or any Personal Information." (Request No. 4).

- "All documents relating to Paychex's protocols, systems, and methods used to protect its customer's personal or financial information." (Request No. 5).

- "All documents and communications relating to who had access to the Doggett Account and/or Personal Information and when, including Doggett employees, Paychex employees, and third parties." (Request No. 8).

- "All documents relating to Paychex's protocols, systems, and methods regarding the termination of an individual's access to a Paychex customer's account or confidential information." (Request No. 12).

- "All documents relating to when Paychex employees accessed the Doggett Account and/or Personal Information." (Request No. 16).[8]

Plaintiffs' document requests are often not limited to any particular time period or tailored to target information relevant or necessary to this dispute. Given the

---

[7] *See also* Interrogatory Nos. 4, 6-11.
[8] *See also* Requests for Production Nos. 2-3, 6, 9-11, 13-20).

services that Paychex provided under the parties service agreements,[9] the document requests essentially seek all documents and communications in Paychex's possession that are in any way related to Plaintiffs as well as all documents and communications pertaining to Paychex's data-security protocols since the beginning of time. Many of Plaintiffs' Requests for Production (*e.g.*, Request Nos. 2-3, 6, 12-20) also ask for documents that (at least in part) seek confidential information and/or information protected by the attorney-client communications privilege (including as applicable to in-house attorneys) or investigative work-product privileges. Plaintiffs document requests also include fishing expeditions (*e.g.*, Request Nos. 18, 20) seeking irrelevant information.

Plaintiffs also unilaterally noticed Paychex's corporate representative(s) for deposition on November 19, 2014, in Houston, Texas on 24 different topics. The deposition topics are generally unlimited in scope as to time and/or subject matter (*e.g.*, 1-5, 9), seek (at least in part) confidential and/or privileged information (*e.g.*, Nos. 6, 10-12, 14, 17, 24), are fishing expeditions (*e.g.*, Nos. 13, 24), and/or seek irrelevant information (*e.g.*, No. 21, 23-24). A deposition of Paychex's corporate representative deposition would be unlikely in arbitration. Depositions are generally reserved for "large, complex commercial dispute" and only upon a showing of good cause. AAA Rule L-3(f). Even if a deposition did occur, the

---

[9] *See* Exhibits A-1 – A-4 to Motion to Compel Arbitration/to Dismiss.

arbitrator would likely impose limitations upon the duration and scope of the deposition to give effect to the purpose of arbitration.

Plaintiffs' deposition notice is also improper and imposes undue burden and expense upon Paychex because it sets the deposition to occur at the offices of Plaintiffs' Counsel in Houston, Texas. "It is well settled that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when, as in this case, the corporation is the defendant." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (citations and quotations omitted). As explained in Paychex's Motion to Transfer Venue, Paychex's corporate headquarters and seven other corporate offices are all located in the greater Rochester, New York area. The Paychex employees and officers with relevant information are located in New York. It would be extremely disruptive to Paychex's operations and impose considerable expense for multiple Paychex officers and/or employees to travel to Houston for a deposition.

If this matter is compelled to arbitration, Plaintiffs will have a full and fair opportunity to request discovery necessary for the fair, cost-effective, and expedient resolution of the Parties' dispute. Plaintiffs' Discovery Requests go far beyond any amount of discovery that would be permitted in arbitration.[10] Forcing

---

[10] Plaintiffs' Discovery Requests are objectionable on numerous additional grounds not expressly addressed in this Motion for purposes of brevity, including but not limited irrelevance, outside the scope of discovery, fishing expedition, improperly assumes facts, vague and ambiguous,

Paychex to incur the expense of responding to the Discovery Requests and appearing for a Rule 30(b)(6) deposition wholly undermines the purpose of the arbitration agreements. This is especially true when Plaintiffs agreed in the Joint Plan and at the Scheduling Conference that they did not need to conduct discovery before a ruling on the Motions.

## IV. <u>CONCLUSION AND PRAYER</u>

For all the foregoing reasons, Paychex respectfully requests that the Court enter an order quashing the Notice, protecting Paychex from the noticed deposition and from Plaintiffs' Discovery Requests, and staying all further discovery pending a ruling on both Motions. Paychex further respectfully requests that the Court vacate the current Scheduling Order and enter a new Scheduling Order (if necessary) after a ruling on the Motions using the current framework as doing so is just, minimizes expenses, and will not cause any undue delay. *See, e.g.*, FED. R. CIV. P. 1; *Hill v. Asset Acceptance, LLC*, 2014 WL 1289578, No. 13cv1718-BEN (BLM), at *2 (S.D. Cal. Mar. 27, 2014) (not designated for publication) (staying discovery and vacating deadlines pending a ruling on motion to compel arbitration). Paychex further requests all other and further relief to which it may show itself justly entitled at law or equity.

---

requesting information in Plaintiff's possession, improperly require Paychex to marshal all of its available proof, seeking confidential and/or privileged information.

Dated: October 30, 2014

Respectfully submitted,

By:   /s/ Christopher B. Trowbridge  
       Christopher B. Trowbridge
       Attorney-in-Charge
       State Bar No. 24008182
       Southern District No. 25549
       Wendy A. Duprey
       Of Counsel
       State Bar No. 24050543
       Southern District No. 967333
       Ross A. Williams
       Of Counsel
       State Bar No. 24066296
       Southern District No. 1154390

1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas  75204-2429
Telephone:  (214) 740-1400
Facsimile: (214) 740-1499

**ATTORNEYS FOR DEFENDANT
PAYCHEX, INC.**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on this 30th day of October, 2014, the undersigned discussed this Motion with opposing counsel Robert D. Ayers, Jr. Opposing counsel stated that he opposes the relief requested herein.  Because the parties have conferred and cannot agree about the disposition of this Motion, Defendant submits this Motion to the Court as opposed.

/s/ Christopher B. Trowbridge
Christopher B. Trowbridge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically to all counsel of record on the 30th day of October 2014, via the Court's CM/ECF system.

/s/ Christopher B. Trowbridge
Christopher B. Trowbridge

1899719_6.docx

# EXHIBIT A

## TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER

1                  IN THE UNITED STATES DISTRICT COURT

2                  FOR THE SOUTHERN DISTRICT OF TEXAS

3                            HOUSTON DIVISION

4  WL DOGGETT, LLC, ET AL        §      CASE NO. 4:14-CV-00506
                                 §      HOUSTON, TEXAS
5  VERSUS                        §      THURSDAY,
                                 §      JUNE 26, 2014
6  DOES (1-10)                   §      10:16 A.M. TO 10:26 A.M.

7
                      INITIAL SCHEDULING CONFERENCE
8
                  BEFORE THE HONORABLE STEPHEN WM. SMITH
9                    UNITED STATES MAGISTRATE JUDGE

10

11                            APPEARANCES:

12       FOR PLAINTIFF/DEFENDANT:      SEE NEXT PAGE

13       COURT RECORDER:              CAROL FELCHAK

14

15

16

17

18

19

20                    TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                   935 ELDRIDGE ROAD, #144
22                  SUGAR LAND, TEXAS 77478
            Tel: 281-277-5325 / Fax: 281-277-0946
23                www.judicialtranscribers.com

24
        Proceedings recorded by electronic sound recording;
25         transcript produced by transcription service.

1                          <u>APPEARANCES</u>:

2

3   FOR THE PLAINTIFF:              CHRISTOPHER L. DODSON, ESQ.
                                    BRACEWELL GIULIANI, LLP
4                                   711 LOUISIANA, STE. 2300
                                    HOUSTON, TX  77002
5

6

7   FOR THE DEFENDANT,
    PAYCHEX, INC.:                  CHRISTOPHER B. TROWBRIDGE, ESQ.
8                                   ROSS A. WILLIAMS, ESQ.
                                    BELL NUNNALLY & MARTIN, LLP
9                                   3232 MCKINNEY AVE., STE. 1400
                                    DALLAS, TX  75204
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      HOUSTON, TEXAS; THURSDAY, JUNE 26, 2014; 10:16 A.M.

2           THE COURT:  All right.  The next case is WL

3    Doggett, LLC, et al versus Does (1-10), Civil Action

4    H-14-506.

5           MR. DODSON:  Good morning, Your Honor.

6           THE COURT:  Good morning.

7           MR. DODSON:  Chris Dodson, Bracewell, for the

8    Plaintiffs.

9           THE COURT:  Good morning.

10          MR. TROWBRIDGE:  Good morning.  Chris Trowbridge

11   and Ross Williams here for the Defendant, Paychex, Inc.

12          THE COURT:  Okay.  All right.  Now this case again

13   has been referred to me by Judge Hittner for purposes of

14   entering a Scheduling Order.  As I understand it, this case

15   involves some access to some private information or perhaps

16   a breach of confidentiality or alleged breach of

17   confidentiality with regard to some employee information; is

18   that correct?

19          MR. DODSON:  Yes, Your Honor, if I could just --

20          THE COURT:  Yes.

21          MR. DODSON:  -- give you the 10-minute version --

22          THE COURT:  All right.

23          MR. DODSON:  -- of how I see things?

24          The Plaintiffs are a series of John Deere

25   dealerships in Texas and Louisiana.  Paychex is the nation's

1   second biggest provider of payroll services, finance

2   services, benefit services, that sort of thing.  They're

3   based in New York.

4           Doggett entered into a contract with Paychex to do

5   their benefits information for them, their payroll, that

6   sort of thing, pretty small contract, a couple of thousand

7   dollars a month.

8           By virtue of that arrangement, Paychex had access

9   to all 1,000 of Doggett's employees' social security

10  numbers, bank account information, direct deposit, that sort

11  of thing.

12          Pursuant to Paychex's policy when members of

13  Doggett's HR Team are termination or leave the company,

14  Doggett sends a notification to Paychex that says, "This

15  person has been terminated or has left the company.  Please

16  delete their access to our system."

17          Doggett, one of their HR Managers left the

18  company.  Doggett sent a notification to Paychex and said,

19  "Delete this person's access."  Paychex replied and said,

20  "We've got your notification.  We have deleted that person's

21  access."

22          They did not, in fact, delete that person's

23  access.

24          Four months later, we discovered that all 1,000 of

25  our employee's information had been stolen, using that

person's user name and password that Paychex had said they
had terminated. We found this out when Paychex's [sic]
employees went to file their 2013 tax returns with the IRS
and the IRS said, "Sorry, you've already filed a tax return.
Your refund has already been given."

And so that's what these identity thieves do these
days, they file tax returns, credit cards have been applied
for, loans have been applied. It was a big, big mess and
the mess continues today.

So that's where we are factually. I don't think
Paychex really disagrees with that, that that's what
happened, that that's how the unauthorized access occurred
and that's kind of the factual background.

Procedurally, Paychex last week filed a Motion to
Transfer Venue to the Western District of New York and a
Motion to Compel Arbitration. The Motion to Transfer Venue,
with all due respect to my colleague, I think barely passes
Rule 11 muster. Doggett is based in Texas. Their
headquarters are in Texas. The 1,000 people whose
identities were stolen are in Texas and Louisiana --

THE COURT: All right. Mr. Dodson, I'll remind
you, I'm not here to rule on those motions.

MR. DODSON: I understand.

THE COURT: Those motions were not referred to me,
so we don't need to get into the merits of those.

1      MR. DODSON:  I understand.

2      THE COURT:  I understand your position.

3      MR. DODSON:  Okay.  And we also recognize, of

4   course, that Motions to Compel Arbitration are granted by

5   this Court and others in the Southern District of Texas

6   often.  We think there are differences with our arbitration

7   clause and this situation, so we will have a response, but I

8   just wanted to get that out there.

9      THE COURT:  All right.  Any Response, Counsel?

10      MR. TROWBRIDGE:  I agree who the parties are.

11      (Laughter.)

12      THE COURT:  Okay.  Well that's something.

13      MR. TROWBRIDGE:  So I'll just -- I know you're not

14   hearing these -- the substance of the motions.

15      THE COURT:  Right.

16      MR. TROWBRIDGE:  I did want to point out, I

17   represent Paychex, Inc.  He's also identified Doe

18   Defendants.

19      THE COURT:  Right.

20      MR. TROWBRIDGE:  He's alleged in the -- the

21   Plaintiffs have alleged in the Complaint that they believe

22   those Does have also worked for Paychex.  We filed a Motion

23   to Transfer Venue.  We've also filed a Motion to Compel

24   Arbitration.  We've agreed at Plaintiff's request to extend

25   their deadline to respond to those till August 1.  We've

1  also agreed to not start discovery disclosures, et cetera,

2  until those are resolved.

3          My concern about setting a trial date at this

4  point in time is, one, I think this Court is either going to

5  allow arbitration or transfer venue.  And two, even if this

6  Court does not, we have briefing ahead of ourselves and

7  we're certainly not going to get a decision for the next six

8  to eight weeks.

9          So I'd like to have that time to have the Court

10  decide those threshold motions factored into when we are set

11  for trial.

12          THE COURT:  Okay.

13          MR. TROWBRIDGE:  I also -- because of the Doe

14  Defendants, as we pointed out in our Joint Proposal we

15  submitted yesterday of a plan, we want to give them time to

16  add those Doe Parties as true parties, once those persons

17  are identified and thus, at that point in time, they're

18  going to need discovery.  They'll need an opportunity to

19  file motions, et cetera, so I think a July/August setting is

20  particularly aggressive in light of what's ahead of us.

21          THE COURT:  All right.  Now the other -- tell me

22  about these Does.  Who are these?  Are these --

23          MR. DODSON:  The Does are whoever actually stole

24  the information.

25          THE COURT:  Okay.

1      MR. DODSON:  We don't know who those people are at

2  this point.  We know that they --

3      THE COURT:  They're not affiliated with Paychex,

4  as far as you know?

5      MR. DODSON:  We know that -- we know that they

6  used the credentials that were supposed to have been

7  terminated.  Paychex had access to that, but --

8      THE COURT:  They may have been one of your former

9  employees, but you don't know?

10      MR. DODSON:  Don't know.

11      THE COURT:  Don't know, okay.  All right.

12      MR. DODSON:  And what I would say to

13  Mr. Trowbridge is that yes, we agree that we should get

14  these motions resolved before we start doing a whole bunch

15  of discovery.  I think that that makes good sense.

16      But I don't think that our discovery period needs

17  to be very long, that there's not going to be --

18      THE COURT:  Yeah, that's what I was going to ask.

19      MR. DODSON:  -- from my perspective that many

20  depositions to take, that much expert discovery.  We put in

21  our report that we think after the motions are resolved,

22  whenever that is, we need about six months for discovery.

23      So I would ask the Court to go ahead and enter a

24  trial date.  If the decision on the motions slips and takes

25  longer, Judge Hittner moves pretty quickly, as you know, I

would be hopefully that we would be able to get a decision

on those motions in August and if we get a decision in

August and then we do six months of discovery, I think a

summer of 2015 trial date is realistic.

MR. TROWBRIDGE:  And I do not.

THE COURT:  I understand that.  I understand that.

Well, what I had anticipated giving as a discovery

cutoff would have been next March and that's somewhat

consistent, I guess, with if we get an August -- if you get

an August decision on those motions.

I think probably a better way to handle it and

probably the way Judge Hittner prefers, is let's go ahead

and get a Scheduling Order in place and if things develop

and it appears that more time is necessary, especially in

light of the additional Defendants that may be brought in,

then we can deal with that at that point, but at least we

have a schedule and a framework and we can go forward.

But I appreciate your concerns and I'm sure Judge

Hittner will take that into account as needs be.

So let me go ahead and give you a Scheduling

Order, understanding that these may not be final dates, but

at least we'll have something in place.

With regard to joinder of new parties, we'll set

that deadline for -- we'll set that deadline for October the

-- October the 1st, 2014.

1            With regard to designation of experts, we'll set

2    the Plaintiff's designation date -- designation date for

3    December the 2nd, with expert reports due within 30 days

4    after that designation date.  The Defendants will designate

5    their experts by January the 2nd, 2015, again with expert

6    reports due within 30 days after that date.

7            The deadline for amending pleadings we'll set for

8    November the 3rd.

9            The discovery cutoff, at least for now, we'll set

10   for March the 2nd, 2015.

11           Motion deadline will be April the 1st.

12           Joint Pretrial Order will be due on June the 26th,

13   205.

14           And the case will be set for trial, at least at

15   this stage, sometime during the months of July/August 2015.

16           Jury demand has been made.

17           And you've estimated, what, about a week to try

18   the case?  I'm sure that's probably a pretty good estimate

19   at this time, so we'll estimate a week's jury trial.

20           All right.  These are your deadlines,

21   understanding that there may be good grounds to shift these

22   later on.

23           MR. DODSON:  Thank you, Your Honor.  And just for

24   the Record's sake, while the motions are pending, we should

25   not be doing disclosures?

1          THE COURT:  I think that's -- I think basically

2     what you have now is an agreement on the Record that -- I

3     won't include it in the Order but I think because with the

4     parties' agreement, I think it makes sense.  And I'm pleased

5     to see the parties cooperating like that.  That does make

6     all the sense in the world at this point.

7          MR. DODSON:  It's early, but we expect it to

8     continue.

9          THE COURT:  Okay.  Very good.

10          MR. TROWBRIDGE:  One more thing, Judge.

11          THE COURT:  Yes, sir.

12          MR. TROWBRIDGE:  We did note in the joint

13     submission with the agreement of Plaintiffs that Plaintiffs

14     agreed that Paychex was not waiving any rights with respect

15     to its pending motions by filing the Joint Plan and by

16     appearing here today.  I just wanted to put on the Record

17     that we are appearing here today, subject to our motions.

18          THE COURT:  Right.  I understand.  I've noted

19     that.

20          Okay.  Thank you for coming in.  You may be

21     excused, Counsel.

22          MR. DODSON:  Thank you, Your Honor.

23          MR. TROWBRIDGE:  Thank you, Your Honor.  Nice to

24     see you.

25          THE COURT:  All right.  Thank you.

1    (Proceeding adjourned at 10:26 a.m.)

2                    * * * * *

3        *I certify that the foregoing is a correct*

4    *transcript to the best of my ability from the electronic*

5    *sound recording of the proceedings in the above-entitled*

6    *matter.*

7    */S/ MARY D. HENRY*

8    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

9    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337*

10   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

11   *JTT INVOICE #53188*

12   *DATE:  OCTOBER 29, 2014*

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

# TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| W.L. DOGGETT LLC AND | § | |
| DOGGETT HEAVY MACHINERY | § | |
| SERVICES, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. NO. 14-cv-506 |
| v. | § | |
| | § | |
| PAYCHEX, INC. and | § | |
| JOHN DOES 1-10 | § | |
| | § | |
| Defendants. | § | |

## <u>PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
TO DEFENDANT PAYCHEX, INC.</u>

To:     Defendant, Paychex, Inc., by and through its counsel of record, Christopher B. Trowbridge, BELL NUNNALLY MARTIN, LLP, 1400 One McKinney Plaza, 3232 McKinney Avenue, Dallas, Texas 75204-2429.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC (collectively, "Plaintiffs" or "Doggett") propound these First Requests for Production on Paychex, Inc. ("Paychex"). Paychex is requested to produce every document requested herein that is within its possession, custody or control to the undersigned at the offices of Bracewell & Giuliani LLP, 711 Louisiana, Suite 2300, Houston, Texas 77002 within thirty (30) days of service of these requests.

Respectfully submitted,

BRACEWELL & GIULIANI, LLP

*/s/ Christopher L. Dodson*

    Christopher L. Dodson
    Attorney-in-Charge
    State Bar No. 24050519
    S.D.Tex. Bar No. 613937
    Email:  chris.dodson@bgllp.com


    Robert D. Ayers, Jr.
    Of Counsel
    State Bar No. 24073870
    S.D. Tex. Bar No. 1127688
    Email: robert.ayers@bgllp.com

711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 – Telephone
(713) 222-3000 – Facsimile

ATTORNEYS FOR
PLAINTIFFS W.L. DOGGETT LLC AND
DOGGETT HEAVY MACHINERY SERVICES, LLC

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record electronically pursuant to the Federal Rules of Civil Procedure on October 6, 2014.

    */s/ Christopher L. Dodson*

    Christopher L. Dodson

#4706469.1

## <u>INSTRUCTIONS AND DEFINITIONS</u>

As used in these Requests, the following instructions and definitions will apply, unless the context clearly indicates otherwise:

1.      These Requests are intended to be continuing and you are requested to make prompt, further and supplemental production whenever an additional document is discovered that is responsive to these Requests.

2.      "Plaintiff," "Plaintiffs," or "Doggett" shall mean W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC and any predecessors, subsidiaries, parent companies, representatives, employees, agents, attorneys, experts, officials, officers, executives, directors, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on its behalf.

3.      "Defendant," "Paychex," "you," "your," or "yourself" shall mean Paychex, Inc. and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf.

4.      "Defendant Doe," "Defendants Does," "John Doe," "John Does," "Paychex Doe," or "Paychex Does" shall mean John Does 1–10, and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on their behalf.

5.      "Personal Information" means any personal and/or financial information relating to Doggett and/or Doggett's current and former employees, including social security numbers, tax identification numbers, bank account numbers, and other financial information, that was ever sent to, received by, stored, maintained, or accessed by Paychex in any way.

6.      "Doggett Account" means the account created and/or maintained by Paychex containing Doggett's and/or its employees' Personal Information, including the online platform provided by Paychex that allowed Doggett and its employees to view payroll and tax information.

7.      "HR Credentials" means the credentials and/or authorization information provided by Paychex to employees in Doggett's human resources department for the administration of and access to the Paychex system(s), the Doggett Account, and any Personal Information.

8.      "Jacques Credentials" means the credentials and/or authorization information provided by Paychex to Doggett human resources manager Chris Jacques, which allowed Chris Jacques access to information stored in the Paychex system(s), the Doggett Account, and any Personal Information.

9.      All responsive documents are to be produced whether in your possession, custody, or control, or the possession, custody, or control of your attorneys, investigators, agents, or other representatives.

#4706469.1

10. "Document" means all written, electronic, reported, recorded, printed, or typed or graphic matter within the scope of the Federal Rules of Civil Procedure and Federal Rules of Evidence, however produced or reproduced, now or at any time in your possession, custody or control. The term shall include, but is not limited to, all letters, correspondence, electronic mail ("e-mail"), telegrams, telexes, cables, telephone records, logs and notations, intra and interoffice communications, microfilm, diaries, calendar entries, summaries, messages, audio tapes, videotapes, digital recordings, computer discs or tapes, computer records and programs and software, electronic data interchange transmissions, photographs, film, invoices, files, ledgers, journals, and other formal and informal books of record and account, minutes, bulletins, instructions, work assignments, reports, memoranda, notes, notebooks, speeches, drafts, data sheets, data compilations, press releases, public statements and/or announcements, public and governmental filings, opinions, worksheets, statistics, contracts, agreements, intra-corporate drafts of the foregoing items and copies or reproductions of the foregoing upon which notations in writing have been made that do not appear on the original.

11. "Communication" means and includes any transmission, receipt, or exchange of information between two or more persons, whether orally or in writing, and including without limitation, any conversation, discussion, or transfer of information by means of letter, note, memorandum, telephone, e-mail, telegraph, telex, telecopier, cable, computer or some other electronic or other medium.

12. The term "person" shall refer to all natural persons, as well as corporations, companies, unincorporated associations, partnerships, joint ventures, entities, and other artificial persons or groups of persons of any kind no matter how identified or organized.

13. "And" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request more inclusive.

14. A reference to any entity includes reference to each of such entity's officers, directors, partners, employees, agents, parent companies, subsidiaries, predecessors-in-interest, successors-in-interest, and all other persons acting on behalf of such entity.

15. A singular form noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice-versa; the use of the masculine form of a pronoun shall also be considered to include within its meaning the feminine form of the pronoun so used, and vice-versa; and the use of any tense of any verbs shall also be construed to include within its meaning all other tenses of the verb so used.

16. As used herein, the term "relating to" means in reference to a subject, making a statement about, referring to, mentioning, discussing, describing, reflecting, dealing with, consisting of, constituting, comprising, recording, or in any way pertaining to the subject, whether in whole or in part and either directly or indirectly.

17. As used herein, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

18. "Lawsuit" refers to the above-captioned cause.

19. Unless otherwise stated, all requests herein seek documents dated from December 8, 2008 until the present.

20. If any document or any portion thereof responsive to any document request is withheld from production, including on the grounds of attorney-client privilege or the work product doctrine, Defendant must state: (a) the author(s) and recipient(s) of the document including those to whom a copy of the document has been delivered, or to whom disclosure of the document was made, either orally or in writing; (b) the stated date of the document and the preparation date, if different; (c) the nature (*i.e.*, letter, memorandum, etc.) and subject matter of the document; and (d) the basis upon which the document is withheld from production.

21. If any document or any portion thereof responsive to any document request has been discarded, destroyed, or redacted in whole or in part, Defendant must state: (a) the date of the discard, destruction or redaction; (b) the reason for the discard, destruction or redaction; (c) the person who discarded, destroyed or redacted the document; and (d) if discarded or completely destroyed, the files where the document was maintained prior to its destruction.

#4706469.1

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications between Doggett and Paychex relating to any Personal Information, including the sending or receiving of such information and the access of such information.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications relating to the theft, unauthorized access, or misappropriation of any Personal Information or the Doggett Account.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**

All documents, materials, and communications relating to the unauthorized access of the Doggett Account.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications relating to who has or had access to the Doggett Account and/or any Personal Information.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to Paychex's protocols, systems, and methods used to protect its customers' personal or financial information.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications relating to the steps taken by Paychex to secure and protect the Personal Information.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 7:**

All agreements between or relating to Paychex and Doggett.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications relating to who had access to the Doggett Account and/or Personal Information and when, including Doggett employees, Paychex employees, and third parties.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications relating to Chris Jacques and/or the Jacques Credentials.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:**

All documents, materials, or communications relating to the creation and deletion of the Jacques Credentials.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**

All documents, materials, or communications relating to access to the Jacques Credentials after October 30, 2013.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 12:**

All documents relating to Paychex's protocols, systems, and methods regarding the termination of an individual's access to a Paychex customer's account or confidential information.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 13:**

All documents and communications relating to any individuals with HR Credentials on the Doggett Account.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 14:**

All documents and communications relating to Paychex learning of the security breach and/or unauthorized access of the Doggett Account and/or any Personal Information.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 15:**

All documents and communications relating to Paychex notifying Doggett of the security breach and/or unauthorized access of the Doggett Account and/or any Personal Information.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**

All documents relating to when Paychex employees accessed the Doggett Account and/or Personal Information.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

All documents relating to any third parties' access of the Doggett Account and/or Personal Information.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**

All documents, materials, and communications relating to any incidents of unauthorized access of Paychex's system, accounts (including its customers' accounts), and/or website in the last ten (10) years.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**

All documents, materials, and communications relating to Paychex's investigation of the unauthorized access of the Doggett Accounts and any findings or opinions associated therewith.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**

All documents, materials, or communications relating to Paychex's protocols and procedures for employee remote access to the Paychex's system and/or accounts, including it's customers' accounts.

**RESPONSE:**

#4706469.1

# EXHIBIT C

# TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| W.L. DOGGETT LLC AND | § | |
| DOGGETT HEAVY MACHINERY | § | |
| SERVICES, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. NO. 14-cv-506 |
| v. | § | |
| | § | |
| PAYCHEX, INC. and | § | |
| JOHN DOES 1-10 | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO
DEFENDANT PAYCHEX, INC.**

To: Defendant, Paychex, Inc., by and through its counsel of record, Christopher B. Trowbridge, BELL NUNNALLY MARTIN, LLP, 1400 One McKinney Plaza, 3232 McKinney Avenue, Dallas, Texas 75204-2429.

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC (collectively, "Plaintiffs" or "Doggett") propound these First Requests for Admission on Paychex, Inc. ("Paychex"). Paychex's responses are due within thirty (30) days of services of these requests.

Respectfully submitted,

BRACEWELL & GIULIANI, LLP

*/s/ Christopher L. Dodson*
Christopher L. Dodson
Attorney-in-Charge
State Bar No. 24050519
S.D.Tex. Bar No. 613937
Email: chris.dodson@bgllp.com

Robert D. Ayers, Jr.
Of Counsel
State Bar No. 24073870
S.D. Tex. Bar No. 1127688
Email: robert.ayers@bgllp.com

711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 – Telephone
(713) 222-3000 – Facsimile

**ATTORNEYS FOR**
**PLAINTIFFS W.L. DOGGETT LLC AND**
**DOGGETT HEAVY MACHINERY SERVICES, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record electronically pursuant to the Federal Rules of Civil Procedure on October 6, 2014.

*/s/ Christopher L. Dodson*

Christopher L. Dodson

# INSTRUCTIONS AND DEFINITIONS

As used in these Requests, the following instructions and definitions will apply, unless the context clearly indicates otherwise:

1. These Requests are intended to be continuing and you are requested to make prompt, further and supplemental production whenever an additional document is discovered that is responsive to these Requests.

2. "Plaintiff," "Plaintiffs," or "Doggett" shall mean W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC and any predecessors, subsidiaries, parent companies, representatives, employees, agents, attorneys, experts, officials, officers, executives, directors, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on its behalf.

3. "Defendant," "Paychex," "you," "your," or "yourself" shall mean Paychex, Inc. and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf.

4. "Defendant Doe," "Defendants Does," "John Doe," "John Does," "Paychex Doe," or "Paychex Does" shall mean John Does 1–10, and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on their behalf.

5. "Personal Information" means any personal and/or financial information relating to Doggett and/or Doggett's current and former employees, including social security numbers, tax identification numbers, bank account numbers, and other financial information, that was ever sent to, received by, stored, maintained, or accessed by Paychex in any way.

6. "Doggett Account" means the account created and/or maintained by Paychex containing Doggett's and/or its employees' Personal Information, including the online platform provided by Paychex that allowed Doggett and its employees to view payroll and tax information.

7. "Jacques Credentials" means the credentials and/or authorization information provided by Paychex to Doggett human resources manager Chris Jacques, which allowed Chris Jacques access to information stored in the Paychex system(s), the Doggett Account, and any Personal Information.

8. As used herein, the term "oral communication" shall mean and include any face-to-face conversation, meeting, or conference; any telephone conversation or conference; and any communication whatsoever by the use of any medium other than writing.

9. "Document" means all written, electronic, reported, recorded, printed, or typed or graphic matter within the scope of the Federal Rules of Civil Procedure and Federal Rules of Evidence, however produced or reproduced, now or at any time in your possession, custody or control. The term shall include, but is not limited to, all letters, correspondence, electronic mail ("e-mail"), telegrams, telexes, cables, telephone records, logs and notations, intra and interoffice

#4706650.1

communications, microfilm, diaries, calendar entries, summaries, messages, audio tapes, videotapes, digital recordings, computer discs or tapes, computer records and programs and software, electronic data interchange transmissions, photographs, film, invoices, files, ledgers, journals, and other formal and informal books of record and account, minutes, bulletins, instructions, work assignments, reports, memoranda, notes, notebooks, speeches, drafts, data sheets, data compilations, press releases, public statements and/or announcements, public and governmental filings, opinions, worksheets, statistics, contracts, agreements, intra-corporate drafts of the foregoing items and copies or reproductions of the foregoing upon which notations in writing have been made that do not appear on the original.

10.     "Communication" means and includes any transmission, receipt, or exchange of information between two or more persons, whether orally or in writing, and including without limitation, any conversation, discussion, or transfer of information by means of letter, note, memorandum, telephone, e-mail, telegraph, telex, telecopier, cable, computer or some other electronic or other medium.

11.     The term "person" shall refer to all natural persons, as well as corporations, companies, unincorporated associations, partnerships, joint ventures, entities, and other artificial persons or groups of persons of any kind no matter how identified or organized.

12.     "And" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request more inclusive.

13.     A reference to any entity includes reference to each of such entity's officers, directors, partners, employees, agents, parent companies, subsidiaries, predecessors-in-interest, successors-in-interest, and all other persons acting on behalf of such entity.

14.     A singular form noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice-versa; the use of the masculine form of a pronoun shall also be considered to include within its meaning the feminine form of the pronoun so used, and vice-versa; and the use of any tense of any verbs shall also be construed to include within its meaning all other tenses of the verb so used.

15.     As used herein, the term "relating to" means in reference to a subject, making a statement about, referring to, mentioning, discussing, describing, reflecting, dealing with, consisting of, constituting, comprising, recording, or in any way pertaining to the subject, whether in whole or in part and either directly or indirectly.

16.     As used herein, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

17.     "Lawsuit" refers to the above-captioned cause.

18.     Unless otherwise stated, all requests herein seek documents dated from December 8, 2008 until the present.

19.     If any document or any portion thereof responsive to any document request is withheld from production, including on the grounds of attorney-client privilege or the work

-4-

product doctrine, Defendant must state:  (a) the author(s) and recipient(s) of the document including those to whom a copy of the document has been delivered, or to whom disclosure of the document was made, either orally or in writing; (b) the stated date of the document and the preparation date, if different; (c) the nature (*i.e.*, letter, memorandum, etc.) and subject matter of the document; and (d) the basis upon which the document is withheld from production.

20.     If any document or any portion thereof responsive to any document request has been discarded, destroyed, or redacted in whole or in part, Defendant must state: (a) the date of the discard, destruction or redaction; (b) the reason for the discard, destruction or redaction; (c) the person who discarded, destroyed or redacted the document; and (d) if discarded or completely destroyed, the files where the document was maintained prior to its destruction.

#4706650.1

<u>**REQUESTS FOR ADMISSION**</u>

<u>**REQUEST FOR ADMISSION NO. 1:**</u>

Admit that Paychex maintains an office in Harris County, Texas.

<u>**RESPONSE:**</u>

<u>**REQUEST FOR ADMISSION NO. 2:**</u>

Admit that Paychex does business in Texas.

<u>**RESPONSE:**</u>

<u>**REQUEST FOR ADMISSION NO. 3:**</u>

Admit that Paychex received Doggett's directive (attached hereto as Exhibit A) to terminate the Jacques Credentials on or about October 30, 2013.

<u>**RESPONSE:**</u>

<u>**REQUEST FOR ADMISSION NO. 4:**</u>

Admit that Paychex did not terminate the Jacques Credentials on or about October 30, 2013.

<u>**RESPONSE:**</u>

<u>**REQUEST FOR ADMISSION NO. 5:**</u>

Admit that on or about October 30, 2013, Christal Laurro informed Doggett that the Jacques Credentials had been terminated.

<u>**RESPONSE:**</u>

**REQUEST FOR ADMISSION NO. 7:**

Admit that, as of October 31, 2013, the Jacques Credentials had not been terminated.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 8:**

Admit that Paychex did not terminate the Jacques Credentials until or after February 1, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 9:**

Admit that Paychex received Doggett's directive (attached hereto as Exhibit A) to terminate the credentials of Tiffany Bordelon on or about October 30, 2013.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 10:**

Admit that Paychex did not terminate the credentials of Tiffany Bordelon on or about October 30, 2013.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 11:**

Admit that, on or about October 30, 2013, Christal Laurro informed Doggett that Tiffany Bordelon's credentials had been terminated.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:**

Admit that, as of October 31, 2013, Tiffany Bordelon's credentials had not been terminated.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 14:**

Admit that Paychex did not terminate Tiffany Bordelon's credentials until or after June 2, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 15:**

Admit that Paychex did not notify Doggett or its employees that their Personal Information had been accessed by and/or exposed to unauthorized third parties.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 16:**

Admit that Paychex failed to report the Doggett Account security breach to government authorities.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 17:**

Admit that Paychex assured Doggett that the Personal Information of Doggett's current and former employees and their dependents was secure.

**RESPONSE:**

#4706650.1

**REQUEST FOR ADMISSION NO. 19:**

Admit that Paychex was aware that failure to terminate the Jacques Credentials and Tiffany Bordelon's credentials upon Doggett's directive posed a risk to the protection of the Doggett Account and Doggett's Personal Information.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 20:**

Admit that at least some of the Paychex Does were employees of Paychex.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 21:**

Admit that Paychex failed to notify Doggett when Paychex became aware that the Doggett Account had been accessed without authorization.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 22:**

Admit that Paychex failed to notify Doggett when Paychex became aware that the Doggett Account had been accessed with the Jacques Credentials after October 30, 2013.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 23:**

Admit that Paychex had the ability to monitor which outside users accessed the Doggett Account.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 25:**

Admit that Paychex failed to ensure the termination of the Jacques Credentials from October 30, 2013 until at least February 1, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 26:**

Admit that Paychex failed to ensure the termination of Tiffany Bordelon's credentials from October 30, 2013 until at least February 1, 2014.

**RESPONSE:**

#4706650.1

# EXHIBIT A



MAIN OFFICE
7110 NORTH FREEWAY
HOUSTON, TEXAS 77076
(713) 675-7000
PERSONAL FAX (713) 742-1253

Brian P. McLemore
Chief Financial Officer

October 30, 2013

Christal Laurro
Paychex

Dear Ms. Laurro

Please be advised that Chris Jaques and Tiffany Bordelon are no longer employed with our Company.
The legal entities impacted by this change are:

| ID | Name | Tax ID |
|------|------------------------------------|------------|
| N258 | W.L. Doggett LLC | 26-0663645 |
| N286 | Red Dog | 26-0663645 |
| N259 | Doggett Heavy Machinery Services LLC | 20-3694220 |

Effective immediate, please remove these individuals as authorized users.  Additionally, please also add
Joan Matassa as an administrator.

Regards,

Brian P. McLemore



# DOGGETT EQUIPMENT SERVICES GROUP
## TOYOTA MATERIAL HANDLING DEALERSHIPS
**Toyota Lift of Houston • Toyota Lift of South Texas • Toyota Lift of El Paso • Servicios De Montacargas De Mexico C.V.**
Houston • San Antonio • Austin • Pharr • Laredo • Corpus Christi • El Paso • Juarez
## JOHN DEERE CONSTRUCTION & FORESTRY EQUIPMENT DEALERSHIPS
**Doggett Heavy Machinery Services • Doggett Machinery Services**
### LOUISIANA
New Orleans (Covington & Kenner) • Baton Rouge • Lafayette • Lake Charles • Monroe • Alexandria • Shreveport
### EAST TEXAS
Houston • Beaumont • Longview • Lufkin • Tyler
### SOUTH TEXAS
Pharr • Corpus Christi • Brownsville • Victoria



| Paychex Use Only |
|---|
| Client BIS ID _____ |

# PAYCHEX

## 401(k) and Section 125
## Plan Contact Change Form

Company Name ___WL Dogsett LLC_____
<br>PRINT

Federal ID ___26-0663645_____ Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan. *Zip code is required.*

**Add Contact**

Print Name ___Joan Matassa___ Email Address ___Joan.matassa @ dogsett .com___ Zip Code ___70816___

Print Name _____ Email Address _____ Zip Code _____

Print Name _____ Email Address _____ Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name ___Tiffany Bordelon___ Email Address ___tiffany.bordelon@ dogsett.com___

Print Name ___Chris Jaquirs___ Email Address ___Chris.Jaques @ dogsett.com___

Print Name _____ Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.

Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.

___Brian P McLemore___
<br>Print Name

___Br P N___ ___CFO___ ___10/30/13___
<br>Authorized Plan Contact      Title      Date

**Please submit form by mail:**     **or fax:**

Paychex, Inc.          Fax: 585-389-7878
<br>Attention: NSI        Email: plancontact@paychex.com
<br>1175 John Street
<br>West Henrietta, NY 14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HRS028 9/13

| Paychex Use Only |
| --- |
| Client BIS ID _____ |

# PAYCHEX™

## 401(k) and **Section 125**
## **Plan Contact Change Form**

Company Name _Red Dog_____
PRINT

Federal ID _26-066 3645_____ Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan. *Zip code is required.*

**Add Contact**

Print Name _Joan Malussa___ Email Address _joan.malussa@dogsett.com_ Zip Code _70816_

Print Name _____ Email Address _____ Zip Code _____

Print Name _____ Email Address _____ Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name _Tiffany Bordelon___ Email Address _tiffany.bordelon@dogsett.com_

Print Name _Chris Jagurs___ Email Address _chris.jagurs@dogsett.com_

Print Name _____ Email Address _____

**I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.**

**Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. ***

*PEO plan administrator is Paychex Business Solutions.*

_Brian P McLemore_____
Print Name

_Brian P M_____ _CFO_____ _10/30/13_
Authorized Plan Contact               Title                Date

**Please submit form by mail:**   **or fax:**

Paychex, Inc.                 Fax: 585-389-7878
Attention: NSI                Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HRS028 9/13

| Paychex Use Only |
| --- |
| Client BIS ID _____ |

# PAYCHEX

## 401(k) and Section 125
## Plan Contact Change Form

Company Name  Dogsett Heavy Machinery Services LLC

PRINT

Federal ID  20 - 3694220        Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.   *Zip code is required.*

**Add Contact**

Print Name  Joan Matussa        Email Address  joan.matussa@dogsett.com   Zip Code  70816

Print Name _____        Email Address _____   Zip Code _____

Print Name _____        Email Address _____   Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name  Tiffany Bordelon        Email Address  tiffany.bordelon@dogsett.com

Print Name  Chris Jaques        Email Address  chris.jaques@dogsett.com

Print Name _____        Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.

Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.*

Brian P McLemore
Print Name

_____        CFO        10/31/13
Authorized Plan Contact        Title        Date

**Please submit form by mail:**    **or fax:**

Paychex, Inc.          Fax: 585-389-7878
Attention: NSI          Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY  14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HRS028   9/13

# EXHIBIT D

# TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| W.L. DOGGETT LLC AND | § | |
| DOGGETT HEAVY MACHINERY | § | |
| SERVICES, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. NO. 14-cv-506 |
| v. | § | |
| | § | |
| PAYCHEX, INC. and | § | |
| JOHN DOES 1-10 | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES
## TO DEFENDANT PAYCHEX, INC.

To:  Defendant, Paychex, Inc., by and through its counsel of record, Christopher B. Trowbridge, BELL NUNNALLY MARTIN, LLP, 1400 One McKinney Plaza, 3232 McKinney Avenue, Dallas, Texas 75204-2429.

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC (collectively, "Plaintiffs" or "Doggett") propounds these Interrogatories on Paychex, Inc. ("Paychex"). Paychex's responses are due within thirty (30) days of services of these requests.

Respectfully submitted,

BRACEWELL & GIULIANI, LLP

*/s/ Christopher L. Dodson*
        Christopher L. Dodson
        Attorney-in-Charge
        State Bar No. 24050519
        S.D.Tex. Bar No. 613937
        Email:  chris.dodson@bgllp.com

Robert D. Ayers, Jr.
Of Counsel
State Bar No. 24073870
S.D. Tex. Bar No. 1127688
Email: robert.ayers@bgllp.com

711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 – Telephone
(713) 222-3000 – Facsimile

**ATTORNEYS FOR**
**PLAINTIFFS W.L. DOGGETT LLC AND**
**DOGGETT HEAVY MACHINERY SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record electronically pursuant to the Federal Rules of Civil Procedure on October 6, 2014.

*/s/ Christopher L. Dodson*

Christopher L. Dodson

#4707312.1

# INSTRUCTIONS AND DEFINITIONS

As used in these Interrogatories, the following instructions and definitions will apply, unless the context clearly indicates otherwise:

1.      These Interrogatories are intended to be continuing and you are requested to make prompt, further and supplemental production whenever an additional document is discovered that is responsive to these Interrogatories.

2.      "Plaintiff," "Plaintiffs," or "Doggett" shall mean W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC and any predecessors, subsidiaries, parent companies, representatives, employees, agents, attorneys, experts, officials, officers, executives, directors, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on its behalf.

3.      "Defendant," "Paychex," "you," "your," or "yourself" shall mean Paychex, Inc. and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf.

4.      "Defendant Doe," "Defendants Does," "John Doe," "John Does," "Paychex Doe," or "Paychex Does" shall mean John Does 1–10, and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on their behalf.

5.      "Personal Information" means any personal and/or financial information relating to Doggett and/or Doggett's current and former employees, including social security numbers, tax identification numbers, bank account numbers, and other financial information, that was ever sent to, received by, stored, maintained, or accessed by Paychex in any way.

6.      "Doggett Account" means the account created and/or maintained by Paychex containing Doggett's and/or its employees' Personal Information, including the online platform provided by Paychex that allowed Doggett and its employees to view payroll and tax information.

7.      "HR Credentials" means the credentials and/or authorization information provided by Paychex to employees in Doggett's human resources department for the administration of and access to the Paychex system(s), the Doggett Account, and any Personal Information.

8.      "Jacques Credentials" means the credentials and/or authorization information provided by Paychex to Doggett human resources manager Chris Jacques, which allowed Chris Jacques access to information stored in the Paychex system(s), the Doggett Account, and any Personal Information.

9.      "Document" means all written, electronic, reported, recorded, printed, or typed or graphic matter within the scope of the Texas Rules of Civil Procedure and Texas Rules of Evidence, however produced or reproduced, now or at any time in your possession, custody or control.  The term shall include, but is not limited to, all letters, correspondence, electronic mail

("e-mail"), telegrams, telexes, cables, telephone records, logs and notations, intra and interoffice communications, microfilm, diaries, calendar entries, summaries, messages, audio tapes, videotapes, digital recordings, computer discs or tapes, computer records and programs and software, electronic data interchange transmissions, photographs, film, invoices, files, ledgers, journals, and other formal and informal books of record and account, minutes, bulletins, instructions, work assignments, reports, memoranda, notes, notebooks, speeches, drafts, data sheets, data compilations, press releases, public statements and/or announcements, public and governmental filings, opinions, worksheets, statistics, contracts, agreements, intra-corporate drafts of the foregoing items and copies or reproductions of the foregoing upon which notations in writing have been made that do not appear on the original.

10. "Communication" means and includes any transmission, receipt, or exchange of information between two or more persons, whether orally or in writing, and including without limitation, any conversation, discussion, or transfer of information by means of letter, note, memorandum, telephone, e-mail, telegraph, telex, telecopier, cable, computer or some other electronic or other medium.

11. The term "person" shall refer to all natural persons, as well as corporations, companies, unincorporated associations, partnerships, joint ventures, entities, and other artificial persons or groups of persons of any kind no matter how identified or organized.

12. "And" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request more inclusive.

13. A reference to any entity includes reference to each of such entity's officers, directors, partners, employees, agents, parent companies, subsidiaries, predecessors-in-interest, successors-in-interest, and all other persons acting on behalf of such entity.

14. A singular form noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice-versa; the use of the masculine form of a pronoun shall also be considered to include within its meaning the feminine form of the pronoun so used, and vice-versa; and the use of any tense of any verbs shall also be construed to include within its meaning all other tenses of the verb so used.

15. As used herein, the term "relating to" means in reference to a subject, making a statement about, referring to, mentioning, discussing, describing, reflecting, dealing with, consisting of, constituting, comprising, recording, or in any way pertaining to the subject, whether in whole or in part and either directly or indirectly.

16. As used herein, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

17. "Lawsuit" refers to the above-captioned cause.

18. Unless otherwise stated, the Interrogatories request information from December 8, 2008 until the present.

19. Whenever an interrogatory requests that you "Identify" a document, the answer

#4707312.1

shall state for each such document:  (a) the date of the document and/or the date the document was prepared; (b) the general nature of or description of the document; (c) the name of the person who signed and/or prepared the document; (d) the name of the person to whom the document was addressed and the name of each person to whom the document or copies were given or sent; and (e) the name of the person having possession, custody or control of the document and the present location of all copies.

20.    Whenever an interrogatory requests that you "Identify" a person, state to the extent known his or her: (a) full name; (b) present or last known home address; (c) present or last known business address; (d) present or last known title or occupations; (e) present or last known employer; (f) occupation, employer's name and address; and (g) job title at the time of the event to which the interrogatory relates.

21.    In answering these Interrogatories, you are required not only to furnish such information as you know of from your own personal knowledge, but also information which is in the possession of your representatives, employees, agents, attorneys, experts, officials, officers, executives, directors, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf.

22.    If you are unable to answer the following Interrogatories completely, answer to the extent possible, specifically stating whatever information and knowledge you have concerning the unanswered portion.

23.    A party is under duty to amend a prior answer if it obtains information upon the basis of which (a) he knows that the answer was incorrect when made, or (b) it knows that the answer, though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment.

#4707312.1

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please identify the person(s) answering, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

**ANSWER:**

**INTERROGATORY NO. 2:**

Please identify each witness you intend to call at the trial of this case and briefly describe what he or she will testify about.

**ANSWER:**

**INTERROGATORY NO. 3:**

Please identify all personal and/or confidential information Paychex ever received or maintained relating to Doggett or its current or former employees and their dependents.

**ANSWER:**

**INTERROGATORY NO. 4:**

Please identify and describe where all Personal Information is or was stored, including all electronic and physical locations, and how that information can or could be accessed.

**ANSWER:**

**INTERROGATORY NO. 5:**

Please identify and describe Paychex's systems and/or processes to protect its customers' confidential information, the steps taken by Paychex to secure and protect the Personal Information, and how these steps did or did not conform with Paychex's established systems and/or processes.

**ANSWER:**

#4707312.1

**INTERROGATORY NO. 6:**

Please explain and describe Paychex's systems and/or processes to terminate a party's or individual's access to a Paychex's customer's personal and/or confidential information maintained by Paychex.

**ANSWER:**

**INTERROGATORY NO. 7:**

Please identify the Paychex employee(s) responsible for ensuring that an individual's access to the Doggett Account or Personal Information is terminated upon request from Doggett.

**ANSWER:**

**INTERROGATORY NO. 8:**

Please provide an explanation, if any, as to why the Jacque Credentials were not promptly terminated by Paychex.

**ANSWER:**

**INTERROGATORY NO. 9:**

Please identify all Paychex and Doggett employees who ever had access to the Doggett Account or Personal Information and explain how and when such employees had access and when those employees did, in fact, access the Doggett Account or Personal Information.

**ANSWER:**

**INTERROGATORY NO. 10:**

Please identify all Paychex employees involved in or with knowledge of the termination of any individual's access to the Doggett Account or Personal Information and explain each such employee's involvement or knowledge.

**ANSWER:**

#4707312.1

**INTERROGATORY NO. 11:**

Please explain and identify when and how Paychex learned of any unauthorized access to the Doggett Account or any Personal Information.

**ANSWER:**


**INTERROGATORY NO. 12:**

Please explain the steps taken by Paychex to investigate the unauthorized access of the Doggett Account and/or any Personal Information and any findings resulting from such investigation.

**ANSWER:**


**INTERROGATORY NO. 13:**

Please explain all information within Paychex's possession, custody or control relating to the theft or unauthorized access of the Doggett Account and/or any Personal Information, including when such unauthorized access occurred, the frequency of such unauthorized access, the manner in which such unauthorized access was obtained, what specific information was revealed and obtained through the unauthorized access, all steps taken by Paychex to stop such unauthorized access, and what additional steps Paychex could have taken to prevent such unauthorized access.

**ANSWER:**


**INTERROGATORY NO. 14:**

Please explain and identify any knowledge on the part of Paychex regarding the use of any Personal Information obtained without authorization, including, but not limited to, illegally filed tax returns, the fraudulent opening of credit lines, and any fraudulent loan activity.

**ANSWER:**


**INTERROGATORY NO. 15:**

Please identify and describe all other incidents involving the unauthorized access, theft, or misappropriation of a Paychex customer's account and/or information in the past ten (10) years.

**ANSWER:**

#4707312.1

# EXHIBIT E

# TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| W.L. DOGGETT LLC AND | § | |
| DOGGETT HEAVY MACHINERY | § | |
| SERVICES, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. NO. 14-cv-506 |
| v. | § | |
| | § | |
| PAYCHEX, INC. and | § | |
| JOHN DOES 1-10 | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFFS' NOTICE OF INTENT TO TAKE
### THE ORAL AND VIDEOTAPED DEPOSITION OF PAYCHEX, INC.

To:     Defendant, Paychex, Inc., by and through its counsel of record, Christopher B. Trowbridge, BELL NUNNALLY MARTIN, LLP, 1400 One McKinney Plaza, 3232 McKinney Avenue, Dallas, Texas 75204-2429.

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC (collectively, "Plaintiffs" or "Doggett") will take the oral and videotaped deposition of the Corporate Representative(s) for Paychex, Inc. ("Paychex") with knowledge of the topics listed in Exhibit A on October [mutually agreeable date], 2014 at a mutually agreeable location. The examination will continue from day to day until completed. You are invited to attend and cross-examine.

Respectfully submitted,

BRACEWELL & GIULIANI, LLP

*/s/ Christopher L. Dodson*

    Christopher L. Dodson
    Attorney-in-Charge
    State Bar No. 24050519
    S.D.Tex. Bar No. 613937
    Email: chris.dodson@bgllp.com

    Robert D. Ayers, Jr.
    Of Counsel
    State Bar No. 24073870
    S.D. Tex. Bar No. 1127688
    Email: robert.ayers@bgllp.com

711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 – Telephone
(713) 222-3000 – Facsimile

**ATTORNEYS FOR
PLAINTIFFS W.L. DOGGETT LLC AND
DOGGETT HEAVY MACHINERY SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record electronically pursuant to the Federal Rules of Civil Procedure on October 6, 2014.

*/s/ Christopher L. Dodson*

Christopher L. Dodson

-2-

<u>**EXHIBIT A**</u>

<u>**INSTRUCTIONS AND DEFINITIONS**</u>

1.      "Plaintiff," "Plaintiffs," or "Doggett" shall mean W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC and any predecessors, subsidiaries, parent companies, representatives, employees, agents, attorneys, experts, officials, officers, executives, directors, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on its behalf.

2.      "Defendant," "Paychex," "you," "your," or "yourself" shall mean Paychex, Inc. and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf.

3.       "Personal Information" means any personal and/or financial information relating to Doggett and/or Doggett's current and former employees, including social security numbers, tax identification numbers, bank account numbers, and other financial information, that was ever sent to, received by, stored, maintained, or accessed by Paychex in any way.

4.      "Doggett Account" means the account created and/or maintained by Paychex containing Doggett's and/or its employees' Personal Information, including the online platform provided by Paychex that allowed Doggett and its employees to view payroll and tax information.

5.      "Jacques Credentials" means the credentials and/or authorization information provided by Paychex to Doggett human resources manager Chris Jacques, which allowed Chris Jacques access to information stored in the Paychex system(s), the Doggett Account, and any Personal Information.

6.      "Document" means all written, electronic, reported, recorded, printed, or typed or graphic matter within the scope of the Federal Rules of Civil Procedure and Federal Rules of Evidence, however produced or reproduced, now or at any time in your possession, custody or control.  The term shall include, but is not limited to, all letters, correspondence, electronic mail ("e-mail"), telegrams, telexes, cables, telephone records, logs and notations, intra and interoffice communications, microfilm, diaries, calendar entries, summaries, messages, audio tapes, videotapes, digital recordings, computer discs or tapes, computer records and programs and software, electronic data interchange transmissions, photographs, film, invoices, files, ledgers, journals, and other formal and informal books of record and account, minutes, bulletins, instructions, work assignments, reports, memoranda, notes, notebooks, speeches, drafts, data sheets, data compilations, press releases, public statements and/or announcements, public and governmental filings, opinions, worksheets, statistics, contracts, agreements, intra-corporate drafts of the foregoing items and copies or reproductions of the foregoing upon which notations in writing have been made that do not appear on the original.

7.      "Communication" means and includes any transmission, receipt, or exchange of information between two or more persons, whether orally or in writing, and including without limitation, any conversation, discussion, or transfer of information by means of letter, note, memorandum, telephone, e-mail, telegraph, telex, telecopier, cable, computer or some other

#4706487.2

electronic or other medium.

8.      The term "person" shall refer to all natural persons, as well as corporations, companies, unincorporated associations, partnerships, joint ventures, entities, and other artificial persons or groups of persons of any kind no matter how identified or organized.

9.      "And" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request more inclusive.

10.     A reference to any entity includes reference to each of such entity's officers, directors, partners, employees, agents, parent companies, subsidiaries, predecessors-in-interest, successors-in-interest, and all other persons acting on behalf of such entity.

11.     A singular form noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice-versa; the use of the masculine form of a pronoun shall also be considered to include within its meaning the feminine form of the pronoun so used, and vice-versa; and the use of any tense of any verbs shall also be construed to include within its meaning all other tenses of the verb so used.

12.     As used herein, the term "relating to" means in reference to a subject, making a statement about, referring to, mentioning, discussing, describing, reflecting, dealing with, consisting of, constituting, comprising, recording, or in any way pertaining to the subject, whether in whole or in part and either directly or indirectly.

13.     As used herein, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

14.     "Lawsuit" refers to the above-captioned cause.

#4706487.2

## DEPOSITION TOPICS

(1)     Any systems, protocols, or processes Paychex uses to secure a client's confidential information and any and all safeguards Paychex performs to keep such information secure, including information stored on clients' online platforms;

(2)     Any training relating to the security of clients confidential information;

(3)     Any systems, protocols, or processes Paychex uses to delete a user's credentials upon the request of a client following the termination of the user's employment with the client, including which employees are notified of such changes and/or have access to such communications from the client;

(4)     Any training materials relating to the termination or deletion of client employees' credentials;

(5)     Access to the Doggett Account or Personal Information, including the identities of Doggett or Paychex employees with access to the Doggett Account or Personal Information and when each such employee accessed the Doggett Account or Personal Information after October 30, 2013;

(6)     Any investigation into the access of the Doggett Account or Personal Information by any Paychex employee after October 30, 2013;

(7)     Requests to terminate an individual's access to the Doggett Account or Personal Information;

(8)     Paychex's actions or inactions in response to Doggett's requests to terminate an individual's access to the Doggett Account or Personal Information and the reasons therefore;

(9)     Any procedures through which Paychex is notified of unauthorized access and/or monitors access to clients' confidential information, including the Doggett Account or Personal Information;

(10)   Any investigation by Paychex into the unauthorized access of the Doggett Account or Personal Information and any findings resulting from such investigation;

(11)   Any knowledge by Paychex regarding the theft, unauthorized access, or misappropriation of the Doggett Account or Personal Information;

(12)   Any knowledge by Paychex regarding the use of wrongfully obtained confidential information from the Doggett Account, including, but not limited to, the filing of tax returns, opening of credit lines, or obtaining of loans;

(13)   Any other incidents of security breaches at Paychex involving the unauthorized access, theft, or misappropriation of Paychex's information or clients' information, including any disciplinary action taken by Paychex against any employees;

#4706487.2

(14)     Any action taken by Paychex to mitigate or halt the unauthorized access and use of Doggett Account information;

(15)     Any communications between Paychex and Doggett involving the termination of the credentials of former Doggett employees Chris Jacques and Tiffany Bordelon, including but not limited to the notice attached hereto as Exhibit B;

(16)     Any agreements between Paychex and Doggett;

(17)     The steps, if any, taken by Paychex to notify authorities about the security breach involving the Doggett Account;

(18)     Any communications between Paychex and Doggett involving the unauthorized access and misappropriation of Doggett account confidential information;

(19)     Any access of or activity on the Doggett Account using Chris Jacques's or Tiffany Bordelon's credentials after October 30, 2013;

(20)     The organizational structure of Paychex, Inc.;

(21)     Paychex's presence in Harris County, Texas;

(22)     Paychex's response, if any, to receiving the notice attached hereto as Exhibit B;

(23)     The sum of money paid to Paychex by Doggett and any service agreement or contracts between the parties; and

(24)     The identity or identities of the employee(s) or supervisor(s) at Paychex responsible for the Doggett Account and the employee(s) or supervisor(s) employment history at Paychex.

#4706487.2

# EXHIBIT B



MAIN OFFICE
7110 NORTH FREEWAY
HOUSTON, TEXAS 77076
(713) 675-7000
PERSONAL FAX (713) 742-1253

Brian P. McLemore
Chief Financial Officer

October 30, 2013

Christal Laurro
Paychex

Dear Ms. Laurro

Please be advised that Chris Jaques and Tiffany Bordelon are no longer employed with our Company. The legal entities impacted by this change are:

| ID | Name | Tax ID |
|------|-------------------------------------|-------------|
| N258 | W.L. Doggett LLC | 26-0663645 |
| N286 | Red Dog | 26-0663645 |
| N259 | Doggett Heavy Machinery Services LLC | 20-3694220 |

Effective immediate, please remove these individuals as authorized users. Additionally, please also add Joan Matassa as an administrator.

Regards,



Brian P. McLemore










# DOGGETT EQUIPMENT SERVICES GROUP

## TOYOTA MATERIAL HANDLING DEALERSHIPS
Toyota Lift of Houston • Toyota Lift of South Texas • Toyota Lift of El Paso • Servicios De Montacargas De Mexico C.V.
Houston • San Antonio • Austin • Pharr • Laredo • Corpus Christi • El Paso • Juarez

## JOHN DEERE CONSTRUCTION & FORESTRY EQUIPMENT DEALERSHIPS
Doggett Heavy Machinery Services • Doggett Machinery Services
### LOUISIANA
New Orleans (Covington & Kenner) • Baton Rouge • Lafayette • Lake Charles • Monroe • Alexandria • Shreveport
### EAST TEXAS
Houston • Beaumont • Longview • Lufkin • Tyler
### SOUTH TEXAS
Pharr • Corpus Christi • Brownsville • Victoria

| Paychex Use Only |
| --- |
| Client BIS ID _____ |

# **PAYCHEX**

## 401(k) and Section 125
## Plan Contact Change Form

Company Name _W L Dogsett LLC_____
PRINT

Federal ID _26 · 0663645_____ Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan. *Zip code is required.*

**Add Contact**

Print Name _Joan Matassa_____ Email Address _Joan.matassa @ dogsett.com_ Zip Code _70816_

Print Name _____ Email Address _____ Zip Code _____

Print Name _____ Email Address _____ Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name _Tiffany Bordelon_____ Email Address _tiffany.bordelon@ dogsett.com_

Print Name _Chris Jaques_____ Email Address _Chris.Jaques @ dogsett.com_

Print Name _____ Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.

**Section 125 PEO Plans Only:** I further understand that Paychex is not the plan administrator of the Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.

_Brian P McLemore_____
Print Name

_Br P M_____        _CFO_____        _10/30/13_____
Authorized Plan Contact               Title                        Date

**Please submit form by mail:**     **or fax:**

Paychex, Inc.                    Fax: 585-389-7878
Attention: NSI                   Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HRS028  9/13

| Paychex Use Only |
|---|
| Client BIS ID _____ |

# PAYCHEX™

## 401(k) and Section 125
## Plan Contact Change Form

Company Name  *Red Dog*
　　　　　　　　　　　　　　　PRINT

Federal ID  26-0663645　　　　Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.  *Zip code is required.

**Add Contact**

Print Name  Joan Mulussa  　Email Address  joan.malussa@dogsett.com  Zip Code 70816

Print Name _____  Email Address _____  Zip Code _____

Print Name _____  Email Address _____  Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name  Tiffany Bordelon  Email Address  tiffany.bordelon@dogsett.com

Print Name  Chris Jaguis  　　Email Address  chris.jagurs@dogsett.com

Print Name _____  Email Address _____

**I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.**

**Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. ***

*PEO plan administrator is Paychex Business Solutions.*

Brian P McLemore
Print Name

B.P M　　　　　　　CFO　　　　10/30/13
Authorized Plan Contact　　　　Title　　　　　　Date

**Please submit form by mail:**　　**or fax:**

Paychex, Inc.　　　　　　Fax: 585-389-7878
Attention: NSI　　　　　　Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HRS028  9/13

# PAYCHEX™

## 401(k) and Section 125
## Plan Contact Change Form

Company Name  Dogsett Heavy Machinery Services LLC
                              PRINT

Federal ID  20-3694220        Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.  *Zip code is required.*

**Add Contact**

Print Name  Joan Matassa        Email Address  joan.matassa @ dogsett.com   Zip Code  70816

Print Name _____      Email Address _____   Zip Code _____

Print Name _____      Email Address _____   Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name  Tiffany Bordelon    Email Address  tiffany.bordelon @ dogsett.com

Print Name  Chris Jaques        Email Address  chris.jaques@ dogsett.com

Print Name _____      Email Address _____

I warrant that I am the authorized plan contact and I am authorized to make the changes to the
plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon
direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and
those added above. I understand that authorized plan contacts have the authority to discuss any
Human Resource product that Paychex, Inc. provides services for, including Retirement Services
and Section 125.

Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the
Section 125 plan. *

*PEO plan administrator is Paychex Business Solutions.*

Brian P McLemore
Print Name

_____        CFO        10/31/13
Authorized Plan Contact      Title       Date

**Please submit form by mail:**    **or fax:**

Paychex, Inc.                  Fax: 585-389-7878
Attention: NSI                 Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

HRS028  9/13

# EXHIBIT F

# TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| W.L. DOGGETT LLC AND DOGGETT HEAVY MACHINERY SERVICES, LLC | § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. NO. 14-cv-506 |
| v. | § | |
| | § | |
| PAYCHEX, INC. and JOHN DOES 1-10 | § § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' AMENDED NOTICE OF INTENT TO TAKE
THE ORAL AND VIDEOTAPED DEPOSITION OF PAYCHEX, INC.**

To:  Defendant, Paychex, Inc., by and through its counsel of record, Christopher B. Trowbridge, BELL NUNNALLY MARTIN, LLP, 1400 One McKinney Plaza, 3232 McKinney Avenue, Dallas, Texas 75204-2429.

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC (collectively, "Plaintiffs" or "Doggett") will take the oral and videotaped deposition of the Corporate Representative(s) for Paychex, Inc. ("Paychex") with knowledge of the topics listed in Exhibit A on November 19, 2014, beginning at 9:30 a.m. at the offices of Bracewell & Giuliani, LLP, 711 Louisiana Street, Suite 2300, Houston, Texas, or at another location to be agreed upon by the parties.  The examination will continue from day to day until completed.  You are invited to attend and cross-examine.

Dated: October 22, 2014    Respectfully submitted,

         BRACEWELL & GIULIANI, LLP

         */s/ Christopher L. Dodson*
           Christopher L. Dodson
           Attorney-in-Charge
           State Bar No. 24050519
           S.D.Tex. Bar No. 613937
           Email:  chris.dodson@bgllp.com

           Robert D. Ayers, Jr.
           Of Counsel
           State Bar No. 24073870
           S.D. Tex. Bar No. 1127688
           Email: robert.ayers@bgllp.com

         711 Louisiana, Suite 2300
         Houston, Texas 77002
         (713) 223-2300 – Telephone
         (713) 222-3000 – Facsimile

          ATTORNEYS FOR
          PLAINTIFFS W.L. DOGGETT LLC AND
          DOGGETT HEAVY MACHINERY SERVICES, LLC

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document was forwarded to all counsel of record electronically and via FedEx pursuant to the Federal Rules of Civil Procedure on October 22, 2014.

         */s/ Christopher L. Dodson*
         Christopher L. Dodson

<u>**EXHIBIT A**</u>

**<u>INSTRUCTIONS AND DEFINITIONS</u>**

1.    "Plaintiff," "Plaintiffs," or "Doggett" shall mean W.L. Doggett LLC and Doggett Heavy Machinery Services, LLC and any predecessors, subsidiaries, parent companies, representatives, employees, agents, attorneys, experts, officials, officers, executives, directors, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on its behalf.

2.    "Defendant," "Paychex," "you," "your," or "yourself" shall mean Paychex, Inc. and any representatives, employees, agents, attorneys, experts, officials, investigators, insurance carriers and all other persons presently or formerly acting or purporting to act on your behalf.

3.    "Personal Information" means any personal and/or financial information relating to Doggett and/or Doggett's current and former employees, including social security numbers, tax identification numbers, bank account numbers, and other financial information, that was ever sent to, received by, stored, maintained, or accessed by Paychex in any way.

4.    "Doggett Account" means the account created and/or maintained by Paychex containing Doggett's and/or its employees' Personal Information, including the online platform provided by Paychex that allowed Doggett and its employees to view payroll and tax information.

5.    "Jacques Credentials" means the credentials and/or authorization information provided by Paychex to Doggett human resources manager Chris Jacques, which allowed Chris Jacques access to information stored in the Paychex system(s), the Doggett Account, and any Personal Information.

6.    "Document" means all written, electronic, reported, recorded, printed, or typed or graphic matter within the scope of the Federal Rules of Civil Procedure and Federal Rules of Evidence, however produced or reproduced, now or at any time in your possession, custody or control.  The term shall include, but is not limited to, all letters, correspondence, electronic mail ("e-mail"), telegrams, telexes, cables, telephone records, logs and notations, intra and interoffice communications, microfilm, diaries, calendar entries, summaries, messages, audio tapes, videotapes, digital recordings, computer discs or tapes, computer records and programs and software, electronic data interchange transmissions, photographs, film, invoices, files, ledgers, journals, and other formal and informal books of record and account, minutes, bulletins, instructions, work assignments, reports, memoranda, notes, notebooks, speeches, drafts, data sheets, data compilations, press releases, public statements and/or announcements, public and governmental filings, opinions, worksheets, statistics, contracts, agreements, intra-corporate drafts of the foregoing items and copies or reproductions of the foregoing upon which notations in writing have been made that do not appear on the original.

7.    "Communication" means and includes any transmission, receipt, or exchange of information between two or more persons, whether orally or in writing, and including without limitation, any conversation, discussion, or transfer of information by means of letter, note, memorandum, telephone, e-mail, telegraph, telex, telecopier, cable, computer or some other

electronic or other medium.

8.      The term "person" shall refer to all natural persons, as well as corporations, companies, unincorporated associations, partnerships, joint ventures, entities, and other artificial persons or groups of persons of any kind no matter how identified or organized.

9.      "And" and "or" shall be construed either conjunctively or disjunctively, whichever makes the request more inclusive.

10.      A reference to any entity includes reference to each of such entity's officers, directors, partners, employees, agents, parent companies, subsidiaries, predecessors-in-interest, successors-in-interest, and all other persons acting on behalf of such entity.

11.      A singular form noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice-versa; the use of the masculine form of a pronoun shall also be considered to include within its meaning the feminine form of the pronoun so used, and vice-versa; and the use of any tense of any verbs shall also be construed to include within its meaning all other tenses of the verb so used.

12.      As used herein, the term "relating to" means in reference to a subject, making a statement about, referring to, mentioning, discussing, describing, reflecting, dealing with, consisting of, constituting, comprising, recording, or in any way pertaining to the subject, whether in whole or in part and either directly or indirectly.

13.      As used herein, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

14.      "Lawsuit" refers to the above-captioned cause.

## DEPOSITION TOPICS

(1)    Any systems, protocols, or processes Paychex uses to secure a client's confidential information and any and all safeguards Paychex performs to keep such information secure, including information stored on clients' online platforms;

(2)    Any training relating to the security of clients confidential information;

(3)    Any systems, protocols, or processes Paychex uses to delete a user's credentials upon the request of a client following the termination of the user's employment with the client, including which employees are notified of such changes and/or have access to such communications from the client;

(4)    Any training materials relating to the termination or deletion of client employees' credentials;

(5)    Access to the Doggett Account or Personal Information, including the identities of Doggett or Paychex employees with access to the Doggett Account or Personal Information and when each such employee accessed the Doggett Account or Personal Information after October 30, 2013;

(6)    Any investigation into the access of the Doggett Account or Personal Information by any Paychex employee after October 30, 2013;

(7)    Requests to terminate an individual's access to the Doggett Account or Personal Information;

(8)    Paychex's actions or inactions in response to Doggett's requests to terminate an individual's access to the Doggett Account or Personal Information and the reasons therefore;

(9)    Any procedures through which Paychex is notified of unauthorized access and/or monitors access to clients' confidential information, including the Doggett Account or Personal Information;

(10)    Any investigation by Paychex into the unauthorized access of the Doggett Account or Personal Information and any findings resulting from such investigation;

(11)    Any knowledge by Paychex regarding the theft, unauthorized access, or misappropriation of the Doggett Account or Personal Information;

(12)    Any knowledge by Paychex regarding the use of wrongfully obtained confidential information from the Doggett Account, including, but not limited to, the filing of tax returns, opening of credit lines, or obtaining of loans;

(13)    Any other incidents of security breaches at Paychex involving the unauthorized access, theft, or misappropriation of Paychex's information or clients' information, including any disciplinary action taken by Paychex against any employees;

(14)   Any action taken by Paychex to mitigate or halt the unauthorized access and use of Doggett Account information;

(15)   Any communications between Paychex and Doggett involving the termination of the credentials of former Doggett employees Chris Jacques and Tiffany Bordelon, including but not limited to the notice attached hereto as Exhibit B;

(16)   Any agreements between Paychex and Doggett;

(17)   The steps, if any, taken by Paychex to notify authorities about the security breach involving the Doggett Account;

(18)   Any communications between Paychex and Doggett involving the unauthorized access and misappropriation of Doggett account confidential information;

(19)   Any access of or activity on the Doggett Account using Chris Jacques's or Tiffany Bordelon's credentials after October 30, 2013;

(20)   The organizational structure of Paychex, Inc.;

(21)   Paychex's presence in Harris County, Texas;

(22)   Paychex's response, if any, to receiving the notice attached hereto as Exhibit B;

(23)   The sum of money paid to Paychex by Doggett and any service agreement or contracts between the parties; and

(24)   The identity or identities of the employee(s) or supervisor(s) at Paychex responsible for the Doggett Account and the employee(s) or supervisor(s) employment history at Paychex.

# EXHIBIT B



MAIN OFFICE
7110 NORTH FREEWAY
HOUSTON, TEXAS 77076
(713) 675-7000
PERSONAL FAX (713) 742-1253

Brian P. McLemore
Chief Financial Officer

October 30, 2013

Christal Laurro
Paychex

Dear Ms. Laurro

Please be advised that Chris Jaques and Tiffany Bordelon are no longer employed with our Company. The legal entities impacted by this change are:

| ID | Name | Tax ID |
|------|------------------------------------|--------------|
| N258 | W.L. Doggett LLC | 26-0663645 |
| N286 | Red Dog | 26-0663645 |
| N259 | Doggett Heavy Machinery Services LLC | 20-3694220 |

Effective immediate, please remove these individuals as authorized users. Additionally, please also add Joan Matassa as an administrator.

Regards,

Brian P. McLemore





# DOGGETT EQUIPMENT SERVICES GROUP

## TOYOTA MATERIAL HANDLING DEALERSHIPS
Toyota Lift of Houston • Toyota Lift of South Texas • Toyota Lift of El Paso • Servicios De Montacargas De Mexico C.V.
Houston • San Antonio • Austin • Pharr • Laredo • Corpus Christi • El Paso • Juarez

## JOHN DEERE CONSTRUCTION & FORESTRY EQUIPMENT DEALERSHIPS
Doggett Heavy Machinery Services • Doggett Machinery Services

### LOUISIANA
New Orleans (Covington & Kenner) • Baton Rouge • Lafayette • Lake Charles • Monroe • Alexandria • Shreveport

### EAST TEXAS
Houston • Beaumont • Longview • Lufkin • Tyler

### SOUTH TEXAS
Pharr • Corpus Christi • Brownsville • Victoria








| Paychex Use Only |
| --- |
| Client BIS ID _____ |

# **PAYCHEX**

## 401(k) and **Section 125**
## **Plan Contact Change Form**

Company Name ___W L Dogsett LLC_____
                                             PRINT

Federal ID ___26 · 0663645_____ Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan. *Zip code is required.*

**Add Contact**

Print Name ___Joan Matassa___ Email Address ___Joan · matassa @ dogsett.com___ Zip Code ___70816___

Print Name _____ Email Address _____ Zip Code _____

Print Name _____ Email Address _____ Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name ___Tiffany Bordelon___ Email Address ___tiffany · bordelon @ dogsett.com___

Print Name ___Chris Jaques___ Email Address ___Chris · Jaques @ dogsett.com___

Print Name _____ Email Address _____

**I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.**

**Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. \***

*\*PEO plan administrator is Paychex Business Solutions.*

___Brian P McLemore___
Print Name

___Br P M_____ ___CFO___ ___10/30/13___
Authorized Plan Contact                    Title                         Date

**Please submit form by mail:**      **or fax:**

Paychex, Inc.                          Fax: 585-389-7878
Attention: NSI                         Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY 14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

| Paychex Use Only |
| --- |
| Client BIS ID _____ |

# PAYCHEX™

## 401(k) and Section 125
## Plan Contact Change Form

Company Name  _Red Dog_____
PRINT

Federal ID  _26 - 066 3645_____  Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.  *Zip code is required.*

**Add Contact**

Print Name _Joan Malussa_____  Email Address _joan.malussa @ dogsell.com_ Zip Code _70816_

Print Name _____  Email Address _____  Zip Code _____

Print Name _____  Email Address _____  Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name _Tiffany Bordelon___  Email Address _tiffany.bordelon @ dogsell.com_

Print Name _Chris Jagurs_____  Email Address _chris.jagurs @ dogsell.com_

Print Name _____  Email Address _____

**I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.**

**Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. ***

*\*PEO plan administrator is Paychex Business Solutions.*

_Bryn P McLemore_____
Print Name

_Bn P M_____  _CFO_____  _10/30/13_
Authorized Plan Contact          Title            Date

**Please submit form by mail:**  **or fax:**

Paychex, Inc.                Fax: 585-389-7878
Attention: NSI               Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY  14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

| Paychex Use Only |
|---|
| Client BIS ID _____ |

# PAYCHEX™

## 401(k) and Section 125
## Plan Contact Change Form

Company Name  Dogsett Heavy Machinery Services LLC

PRINT

Federal ID  20-3694220          Office/Client Number _____

Paychex is requested to **add** the following plan contacts for the plan.  *Zip code is required.*

**Add Contact**

Print Name  Joan Matussa          Email Address  joan.matussa@dogsett.com   Zip Code  70816

Print Name _____          Email Address _____   Zip Code _____

Print Name _____          Email Address _____   Zip Code _____

Paychex is requested to **remove** the following plan contacts for the plan.

**Remove Contact**

Print Name  Tiffany Bordelon          Email Address  tiffany.bordelon@dogsett.com

Print Name  Chris Jaques          Email Address  chris.jaques@dogsett.com

Print Name _____          Email Address _____

**I warrant that I am the authorized plan contact and I am authorized to make the changes to the plan contact(s) as set forth above. I understand that Paychex will be entitled to act and rely upon direction, to the extent permitted by the Plan, provided by the plan contacts currently in place and those added above. I understand that authorized plan contacts have the authority to discuss any Human Resource product that Paychex, Inc. provides services for, including Retirement Services and Section 125.**

**Section 125 PEO Plans Only: I further understand that Paychex is not the plan administrator of the Section 125 plan. ***

*\*PEO plan administrator is Paychex Business Solutions.*

Brian P McLemore
Print Name

_____          CFO          10/31/13
Authorized Plan Contact                    Title                 Date

**Please submit form by mail:**     **or fax:**

Paychex, Inc.          Fax: 585-389-7878
Attention: NSI          Email: plancontact@paychex.com
1175 John Street
West Henrietta, NY  14586

**If you have any questions, contact the Paychex at 1-800-472-0072.**

# EXHIBIT G

# TO PAYCHEX'S MOTION FOR PROTECTIVE ORDER



# Commercial

Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex
Commercial Disputes**



American Arbitration Association®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013
Fee Schedule Amended and Effective June 1, 2010

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $75,000, the rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial

Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

*If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

*The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs. The key features of these procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

# Commercial Arbitration Rules

## R-1. Agreement of Parties*+

**(a)** The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.

Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000 or more, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-3 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures, the Procedures for Large, Complex Commercial Disputes, or the Procedures for the Resolution of Disputes through Document Submission (Rule E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Sections R-1 through R-58 of these rules.

*\* The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the supplementary procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.*

*+ A dispute arising out of an employer promulgated plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures.*

American Arbitration Association

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## R-19. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Section R-19(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-18(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-18(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-19(a) should nonetheless apply prospectively.

**(c)** In the course of administering an arbitration, the AAA may initiate communications with each party or anyone acting on behalf of the parties either jointly or individually.

**(d)** As set forth in R-43, unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## R-20. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-21. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Sections P-1 and P-2 of these rules address the issues to be considered at the preliminary hearing.

## R-22. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

**i.** require the parties to exchange documents in their possession or custody on which they intend to rely;

**ii.** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

**iii.** require the parties, in response to reasonable document requests, to make available to the other party documents, in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

**iv.** require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them.

## R-23. Enforcement Powers of the Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:

**(a)** conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality;

**(b)** imposing reasonable search parameters for electronic and other documents if the parties are unable to agree;

# Preliminary Hearing Procedures

## P-1. General

**(a)** In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

**(b)** Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

## P-2. Checklist

**(a)** The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

**(i)** the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to R-9;

**(ii)** whether all necessary or appropriate parties are included in the arbitration;

**(iii)** whether a party will seek a more detailed statement of claims, counterclaims or defenses;

**(iv)** whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

**(v)** which:

**(a)** arbitration rules;

**(b)** procedural law; and

**(c)** substantive law govern the arbitration;

**(vi)** whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation:

**(a)** any preconditions that must be satisfied before proceeding with the arbitration;

**(b)** whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

**(c)** consolidation of the claims or counterclaims with another arbitration; or

**(d)** bifurcation of the proceeding.

(vii) whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

(viii) whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

(ix) how costs of any searches for requested information or documents that would result in substantial costs should be borne;

(x) whether any measures are required to protect confidential information;

(xi) whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

(xii) whether, according to a schedule set by the arbitrator, the parties will:

  (a) identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

  (b) exchange and pre-mark documents that each party intends to submit; and

  (c) exchange pre-hearing submissions, including exhibits;

(xiii) the date, time and place of the arbitration hearing;

(xiv) whether, at the arbitration hearing:

  (a) testimony may be presented in person, in writing, by video conference, via the internet, telephonically, or by other reasonable means;

  (b) there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

(xv) whether any procedure needs to be established for the issuance of subpoenas;

(xvi) the identification of any ongoing, related litigation or arbitration;

(xvii) whether post-hearing submissions will be filed;

(xviii) the form of the arbitration award; and

(xix) any other matter the arbitrator considers appropriate or a party wishes to raise.

(b) The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

## L-3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with sections P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator(s) determines otherwise.

**(d)** The parties and the arbitrator(s) shall address issues pertaining to the pre-hearing exchange and production of information in accordance with rule R-22 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within the Scheduling and Procedure Order.

**(e)** The arbitrator, or any single member of the arbitration tribunal, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within his discretion, including, without limitation, the issuance of orders set forth in rules R-22 and R-23 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.